Teresa Pritchett appeals from a summary judgment in favor of ICN Medical Alliance, Inc. We affirm the judgment in part, reverse it in part, and remand.
 I. Facts and Procedural History
On January 5, 2001, Dr. Thomas Rumley leased from ICN an "Nlite" laser device, which is a "Class IV" laser used in cosmetic surgery and designed to reduce the appearance of wrinkles on a patient's skin. Dr. Rumley had never used an Nlite laser before he leased the laser from ICN. ICN sent one of its employees, Jeff Tisue, to provide technical advice to Dr. Rumley while he used the laser initially. ICN sent with the Nlite laser device two alternative forms of eye protection — goggles and a corneal shield — to be worn by patients during the laser procedure. Dr. Rumley performed the laser procedure on Pritchett using the Nlite laser device; Tisue was present during the procedure, which was intended to reduce the appearance of wrinkles around Pritchett's eyes.
During the course of the procedure, Dr. Rumley determined that the goggles being worn by Pritchett as eye protection were, in his opinion, either not providing sufficient protection or were obstructing his performance of the procedure. Tisue recommended *Page 935 
to Dr. Rumley that he could use wet gauze instead of the protective devices ICN had provided with the laser device. Dr. Rumley agreed and used wet gauze, along with either his finger or a tongue depressor, to shield Pritchett's eyes from the laser beam. After the procedure, Pritchett discovered that her right eye had been damaged. Pritchett's expert witness testified in deposition that Pritchett's injury was consistent with the penetration of her eye by a laser beam.
Pritchett sued ICN and Dr. Rumley. As to ICN, Pritchett alleged, among other things, that ICN was vicariously liable for Tisue's negligence in recommending the use of wet gauze instead of the eye protection provided with the Nlite laser device and that ICN had negligently and wantonly failed to properly train and supervise Tisue. As to Dr. Rumley, Pritchett alleged medical malpractice.
Dr. Rumley moved for a summary judgment on Pritchett's medical-malpractice claim, and ICN moved for a summary judgment on Pritchett's claims that it was vicariously liable for Tisue's actions and that it had negligently and wantonly failed to properly train and supervise Tisue. Pritchett informed the trial court that she would not contest Dr. Rumley's motion, but she did contest ICN's. Based on briefs and oral arguments, the trial court granted ICN's motion. Subsequently, the trial court granted Dr. Rumley's motion, stating: "Plaintiff having conceded [the] same." The trial court certified its summary judgment for ICN as final under Rule 54(b), Ala. R. Civ. P. Pritchett appealed.
 II. Standard of Review
"The standard of review applicable to a summary judgment is the same as the standard for granting the motion. . . ."McClendon v. Mountain Top Indoor Flea Market, Inc.,601 So.2d 957, 958 (Ala. 1992).
 "A summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala.R.Civ.P. The burden is on the moving party to make a prima facie showing that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. In determining whether the movant has carried that burden, the court is to view the evidence in a light most favorable to the nonmoving party and to draw all reasonable inferences in favor of that party. To defeat a properly supported summary judgment motion, the nonmoving party must present `substantial evidence' creating a genuine issue of material fact — `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' Ala. Code 1975, § 12-21-12; West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989)."
Capital Alliance Ins. Co. v. Thorough-Clean, Inc.,639 So.2d 1349, 1350 (Ala. 1994). Questions of law are reviewed de novo. Alabama Republican Party v. McGinley,893 So.2d 337, 342 (Ala. 2004).
 III. Analysis A. Respondeat Superior i
ICN does not dispute that when Tisue suggested using wet gauze instead of the goggles or corneal shield provided by ICN with the Nlite laser device, Tisue was acting within the line and scope of his employment with ICN. Therefore, Pritchett contends, if she presented substantial evidence indicating that Tisue committed tortious acts that proximately caused her injury, ICN can be held liable. See generally *Page 936 Ex parte Wild Wild West Soc. Club, Inc.,806 So.2d 1235, 1241 (Ala. 2001) ("Under a theory of respondeat superior, a principal can be held liable for a tort committed by his agent only if the agent commits the tort while working within the line and scope of his employment.").
In support of the summary judgment in its favor, ICN relies on the fact that Pritchett failed to contest Dr. Rumley's summary-judgment motion. ICN points out that Dr. Rumley submitted with his motion an affidavit in which he stated (a) that he did not breach the standard of care applicable to plastic surgeons in the local and national community and (b) that his actions did not cause Pritchett's injury. ICN contends that, because Pritchett did not contest Dr. Rumley's summary-judgment motion, all of the allegations of Dr. Rumley's affidavit must be taken as uncontroverted. ICN cites HaroldBrown Builders, Inc. v. Jordan Co., 401 So.2d 36, 38
(Ala. 1981), in which this Court stated:
 "Although an adverse party is not required to respond to a motion for summary judgment, this court has noted failure to do so may be perilous for the adverse party. Ray v. Midfield Park, 293 Ala. 609, 308 So.2d 686 (1975). By defendant's failure to respond to the motion, the trial court had no alternative but to consider the evidence presented by the moving party as uncontroverted.
" In Harold Brown Builders, this Court held that, because the nonmoving party failed to contest the summary-judgment motion, the trial court had to consider as uncontroverted the evidence presented by the summary-judgment movant. But the Court in Harold Brown Builders was speaking in the context of the trial court's consideration of a single summary-judgment motion that was before it. The Court there was not considering the effect of the nonmovant's failure to contest one defendant's summary-judgment motion on the separate motion for a summary judgment filed by a codefendant, and we have found no Alabama cases addressing that particular issue.
Assuming that the failure to contest one defendant's summary-judgment motion can ever be considered in determining whether a plaintiff conceded an element of a claim against another defendant, we must determine what Pritchett actually conceded. In response to Dr. Rumley's motion, Pritchett sent the trial court a letter stating only: "Dr. Rumley has recently filed a Motion for Summary Judgment. The plaintiff has no opposition. Thank you for your attention in this matter." Taken alone, this relatively broad statement might be considered a concession that Dr. Rumley did not breach the standard of care and that his use of wet gauze as eye protection, instead of the goggles or corneal shield provided with the laser device, did not cause Pritchett's injury. A logical progression from the foregoing supposition would lead to the conclusion that, if using wet gauze instead of the provided eye protection was not a breach of the standard of care because wet gauze is appropriate eye protection when a laser beam is being used, then Tisue cannot be said to have breached the standard of care by suggesting that form of eye protection be used. It is also logical to conclude that, if Dr. Rumley's use of wet gauze was not the actual cause of Pritchett's injury, then neither was Tisue's suggestion that Dr. Rumley use wet gauze to protect Pritchett's eyes during the procedure.
However, in response to ICN's motion for a summary judgment, Pritchett argued that she had presented evidence indicating that wet gauze was not proper eye protection when a laser beam is being used. She also argued that she had presented sufficient evidence indicating that the use of *Page 937 
wet gauze instead of goggles or a corneal shield caused her injury. Indeed, Pritchett's concession of Dr. Rumley's motion is consistent with another supposition: that Dr. Rumley's acquiescence in Tisue's recommendation that he could use wet gauze instead of the protective devices provided with the laser device did not breach the standard of care applicable to Dr.Rumley, who was not an expert on the operation of the Nlite laser device, as was Tisue. Consistent with the foregoing interpretation of her concession, Pritchett states in her reply brief: "Pritchett's decision not to secure a qualified medical standard-of-care expert to challenge Dr. Rumley's self-assessment of his compliance with the applicable standard of care for a board-certified plastic surgeon provided no benefit to Jeff Tisue or ICN." In light of Pritchett's arguments below in opposition to ICN's motion for a summary judgment and the ambiguity of the scope of the concession as to Dr. Rumley's motion, we find it unreasonable to conclude that Pritchett by indicating she was not opposed to Dr. Rumley's summary-judgment motion conceded that Tisue's recommendation of the use of wet gauze was appropriate or that Dr. Rumley's actions pursuant to that recommendation did not cause her injury.
 ii.
Unless Tisue owed a duty to Pritchett to provide accurate information to Dr. Rumley regarding the proper eye protection to be used during the cosmetic procedure involving the Nlite laser device, ICN cannot be held liable for Tisue's conduct.
 "In Alabama, the existence of a duty is a strictly legal question to be determined by the court. Wal-Mart Stores, Inc. v. Smitherman, 872 So.2d 833 (Ala. 2003); Ex parte Farmers Exch. Bank, 783 So.2d 24, 27 (Ala. 2000). See also State Farm Fire Cas. Co. v. Owen, 729 So.2d 834 (Ala. 1998). The existence of a duty is determined by a number of factors, including `(1) the nature of the defendant's activity; (2) the relationship between the parties; and (3) the type of injury or harm threatened.' Morgan v. South Cent. Bell Tel. Co., 466 So.2d 107, 114 (Ala. 1985). ""The key factor is whether the injury was foreseeable by the defendant.'"' Key v. Compass Bank, Inc., 826 So.2d 159, 170 (Ala.Civ.App. 2001) (quoting Patrick v. Union State Bank, 681 So.2d 1364, 1368 (Ala. 1996)) (emphasis added)."
Taylor v. Smith, 892 So.2d 887, 891-92 (Ala. 2004). But see Garner v. Covington County, 624 So.2d 1346,1350 (Ala. 1993) ("Although the existence vel non of a duty is ordinarily a question of law for the court, it is not error to submit the question to the jury if the factual basis for the question is in sufficient dispute: to allow the trial court to determine such questions would undermine the traditional factfinding function of the jury."). Pritchett points out that Tisue testified in deposition that ICN was responsible for his safety training regarding the Nlite laser device and that ICN trained Tisue to be in charge of safety during procedures involving the laser device. Dr. Rumley testified in deposition that he thought Tisue was "a safety person with the laser." ICN's literature states that[p]roviding eyeshields are being used, [there is] no issue of treating close to the eye" (emphasis added), that "[t]he single most important issue for both patient and medical personnel during a laser procedure is eye protection," that "[a] Class IV laser . . . should never be viewed directly or as a spectral or diffuse (scattered) reflection by the unprotected eye," and that "Class IV lasers will do permanent and immediate damage." Because "[t]he key factor [in establishing a duty] is whether the injury was foreseeable by the defendant," we conclude that *Page 938 
Tisue owed a duty to Pritchett to provide adequate information to Dr. Rumley regarding eye protection during the procedure.Smitherman v. McCafferty, 622 So.2d 322, 324 (Ala. 1993).
"[Q]uestions regarding breach of that duty . . . and proximate cause are ordinarily questions of fact for the jury."Sungas, Inc. v. Perry, 450 So.2d 1085, 1089 (Ala. 1984),overruled on other grounds by Garner v. CovingtonCounty, 62A So.2d 1346 (Ala. 1993). In support of its contention that Tisue had breached no duty to Pritchett, ICN appears to contend that Pritchett conceded as much by failing to contest Dr. Rumley's summary-judgment motion, a contention with which we have already dealt. ICN also appears to argue in the alternative that the allegation in Dr. Rumley's affidavit thathe breached no duty is sufficient to shift the burden to Pritchett as the nonmovant, a burden ICN contends she has not met.
Pritchett points out that, although Tisue testified in deposition that he "knew" that gauze blocks out a laser beam in the same manner as do goggles or a corneal shield, he could not cite any ICN literature or other authority specifically so providing. He claimed that he got the idea that gauze would work as well as goggles or a corneal shield from the American National Standards Institute ("ANSI"), but again he could not cite a specific ANSI standard indicating that gauze could be used as effective eye protection with a Class IV laser like the Nlite laser device. Dr. Matthew Goren, Pritchett's expert witness, testified in deposition that he could not "imagine a circumstance where wet gauze would be appropriate eye protection from a class [IV] laser."[1] Considering the record in the light most favorable to Pritchett, which we must do in deciding ICN's summary-judgment motion, we conclude that Pritchett has presented substantial evidence indicating that, by suggesting that Dr. Rumley use wet gauze instead of the goggles or corneal shield provided with the Nlite laser device, Tisue breached the duty he owed Pritchett to properly advise Dr. Rumley as to appropriate eye protection during the procedure.
As to causation, ICN again relies mainly on Pritchett's failure to contest Dr. Rumley's summary-judgment motion, a reliance we have rejected. In addition, ICN appears to imply throughout its brief that Dr. Rumley's acceptance of Tisue's advice constituted a superseding intervening act that broke the chain of causation between Tisue's suggestion and Pritchett's injury.[2]
 "`"The proximate cause of an injury is that cause which, in the natural and probable sequence of events, and without the intervention or coming in of some new or independent cause, produces the injury, and without which the injury would not have occurred."' Hicks v. Vulcan Eng'g Co., 749 So.2d 417, 424
(Ala. 1999) (quoting trial court's jury charge). `[I]f a new, independent act breaks the chain of causation, it supersedes *Page 939 
the original act, which thus is no longer the proximate cause of the injury.' Riojas v. Grant County Pub. Util. Dist, 117 Wash.App. 694, 697, 72 P.3d 1093, 1095 (2003). '[A]n [act] is superseding only if it is unforeseeable. A foreseeable intervening [act] does not break the causal relationship between the defendants' actions and the plaintiffs' injuries' Kelly v. M. Trigg Enters., Inc., 605 So.2d 1185, 1190 (Ala. 1992)."
Alabama Power Co. v. Moore, 899 So.2d 975, 979
(Ala. 2004) (some emphasis added).
Dr. Rumley testified in deposition that he thought of Tisue as "a safety person." He also testified that Tisue "suggested that [wet gauze] would be adequate eye protection" during the procedure he was performing on Pritchett and that he understood Tisue's suggestion to be an indication that the use of wet gauze was an adequate method of protecting a patient's eyes during a procedure in which a laser beam is used. Pritchett testified that, after she expressed concern over the adequacy of wet gauze, Tisue responded that "it would be fine, that [Pritchett] would be protected." Pritchett testified that she asked Tisue if he was sure that she did not need the goggles and that Tisue responded, "No, you'll be fine."
Pritchett testified in deposition that, during the procedure, after the goggles were removed, she could see "a bright light."[3] Dr. Goren stated in his affidavit that, "more likely than not, the laser damaged Ms. Pritchett's right eye, and probably caused her vision problems, including damage to her macula." He testified in deposition that the retinal pigment epithelium in Pritchett's eye was probably caused by a laser beam penetrating her eye.[4] Other than Dr. Rumley's affidavit, ICN presented no expert testimony to the effect that Pritchett's injury was caused by something other than a laser beam.
Considering the entire record in the light most favorable to Pritchett, we conclude that she presented substantial evidence indicating that Tisue's breach of his duty proximately caused her injury and that Dr. Rumley's acceptance of Tisue's advice that he use wet gauze — a foreseeable event in light of Tisue's duties and Dr. Rumley's relative inexperience with the Nlite laser device — did not constitute an intervening cause.[5] Accordingly, we hold that the trial court erred in entering a summary judgment for ICN on Pritchett's claim against ICN based on Tisue's negligence.[6] *Page 940 
 B. Negligent Training and/or Supervision
The parties agree that the following principles apply to Pritchett's claims of negligent training and/or supervision:
 "In the master and servant relationship, the master is held responsible for his servant's incompetency when notice or knowledge, either actual or presumed, of such unfitness has been brought to him. Liability depends upon its being established by affirmative proof that such incompetency was actually known by the master or that, had he exercised due and proper diligence, he would have learned that which would charge him in the law with such knowledge. It is incumbent on the party charging negligence to show it by proper evidence. This may be done by showing specific acts of incompetency and bringing them home to the knowledge of the master, or by showing them to be of such nature, character, and frequency that the master, in the exercise of due care must have had them brought to his notice. While such specific acts of alleged incompetency cannot be shown to prove that the servant was negligent in doing or omitting to do the act complained of, it is proper, when repeated acts of carelessness and incompetency of a certain character are shown on the part of the servant to leave it to the jury whether they would have come to his knowledge, had he exercised ordinary care."
Thompson v. Havard, 285 Ala. 718, 723, 235 So.2d 853,858 (1970). See generally, Zielke v. AmSouth Bank,N.A., 703 So.2d 354, 357-58 n. 1 (Ala.Civ.App. 1996) ("After reviewing Alabama caselaw, we see no distinction between claims of wrongful super-vision and claims of wrongful training."). Pritchett contends that Tisue had a "history of recommending the use of wet gauze as appropriate patient eye-protection." (Pritchett's brief at 37.) In her statement of facts, Pritchett points out that, in deposition, Dr. Rumley testified:
 "And I told Teresa [Pritchett] that well, Jeff Tisue suggested that we use a wet gauze, which is a medical — white medical gauze. I can't describe it any better. It was moistened in saline. And he suggested this would work and that they used it frequently around the eye because commonly these hard goggles didn't fit that well, particularly when you are working close to the eye."
(Emphasis added.) The following occurred during Tisue's deposition:
 "Q. [By Pritchett's attorney:] Wet gauze, is that something that you typically suggested that physicians utilize for the patient's eye safety when the doctor is working around the patient's eye?
 "A. [By Tisue:] It's frequently used.
 ". . . .
 "Q. [By ICN's attorney:] Was the January 5, 2001 procedure involving [Pritchett], was that the first time that you had *Page 941 
used the Nlite with a physician in their office?
 "A. No.
 "Q. How many times had you done that prior to that time?
 "A. Oh, 30, UO.
 "Q. Had you used wet gauze in any of those previous procedures —
 "A. Sure.
 "Q. As an eye protectant? Are you aware of any complaints of eye damage involving any of those procedures?
 "A. I know of none."
(Emphasis added.)
In a case dealing with the alleged negligent entrustment of an automobile, in which the issue was whether the entrusted driver was incompetent, this Court said: "Negligence is not synonymous with incompetency. The most competent may be negligent.Alabama City, G. A. Ry. Co. v. Bessiere,190 Ala. 59, 66 So. 805 [(1914)]; McGowin v. Howard,246 Ala. 553, 21 So.2d 683 [(1945)]. But one who is habituallynegligent may on that account be incompetent." McGowin v.Howard, 251 Ala. 204, 208, 36 So.2d 323, 325 (1948) (emphasis added). In light of the evidence indicating Tisue's role as a "safety person," ICN's awareness of the safety issues involved with the use of the Nlite laser device, and the absence of any literature from ICN condoning the use of wet gauze as a protective device for the eyes during a procedure using the Nlite laser device, we conclude that Pritchett has presented substantial evidence indicating that, had ICN exercised due and proper diligence in either training or supervising Tisue, it would have learned of Tisue's practice on possibly 30 or 40 occasions of suggesting the use of wet gauze in lieu of the goggles or corneal shield provided by ICN with the laser device, contrary to ICN's instructions. "Fair-minded persons in the exercise of impartial judgment [could] reasonably infer" as much. West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989). Accordingly, we hold that the trial court erred in entering a summary judgment for ICN on Pritchett's negligent-training and/or supervision claim.
 C. Wanton Training and/or Supervision "`Wantonness' is statutorily defined as `[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others.' Ala. Code 1975, § 6-11-20(b)(3). `Wantonness' has been defined by this Court as the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result."
Alfa Mut. Ins. Co. v. Roush, 723 So.2d 1250, 1256
(Ala. 1998). Pritchett has not met her burden of presenting substantial evidence indicating that ICN recklessly or consciously disregarded the safety of others in that ICN knew that the use of wet gauze during the procedure using the Nlite laser device, in lieu of the goggles or corneal shield it provided, would probably result in injury to patients. She has not presented any evidence indicating that other patients had been injured by the use of wet gauze during a similar procedure or otherwise indicating that ICN was aware that such an injury would probably occur. Therefore, the trial court's summary judgment for ICN on Pritchett's wanton-training and/or supervision claim was proper and is affirmed.
 IV. Conclusion
The summary judgment for ICN is affirmed as to Pritchett's claim that ICN wantonly trained and/or supervised Tisue. As to Pritchett's claim alleging that ICN *Page 942 
negligently trained and/or supervised Tisue and her claim alleging that ICN is vicariously liable for Tisue's acts, the summary judgment for ICN is reversed. The case is remanded for proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
WOODALL, SMITH, and PARKER, JJ., concur:
NABERS, C.J., concurs in the result.
[1] ICN points out that, in his deposition, Dr. Goren made multiple references to the procedure in question being performed on a patient's eyelids. According to ICN, because the procedure was performed not on her eyelids, but aroundPritchett's eyes, Dr. Goren's deposition testimony evidences a fundamental misunderstanding of the procedure Dr. Rumley was performing. However, we fail to see how this contention negates Dr. Goren's opinion that he could not imagineany circumstance in which wet gauze would be appropriate eye protection from a Class IV laser.
[2] However, we note that, at one point in its brief, ICN states that "there was no prior negligence or subsequentmedical negligence."In any event, we conclude that the evidence at this point does not support a summary judgment based on intervening cause.
[3] ICN contends that Pritchett claimed to have seen the bright light only when Dr. Rumley was operating on her left eye, while her right eye is the eye that was injured. While that contention may affect the weight a jury might assign to the evidence, it does not negate the question of fact created by the evidence.
[4] Again, we note that ICN contends that Dr. Goren did not understand the specifics of the procedure that Dr. Rumley actually performed, but we fail to see how ICN's contention negates Dr. Goren's conclusion that Pritchett's eye injury was probably caused by a laser beam penetrating it.
[5] ICN implies throughout its brief that Dr. Rumley's modification of Tisue's advice — using either his finger or a tongue depressor to hold the wet gauze in place — has legal significance, although ICN does not explain precisely what that significance is. We conclude that there exists a question of fact as to whether Dr. Rumley's so-called modification of Tisue's advice was the actual cause of Pritchett's injury.
[6] Throughout her brief, Pritchett refers to Tisue's "misconduct" as "wrongful" and "tortious." She does not specify whether she makes a negligence claim only, or a wantonness one as well, although she refers to the elements of a negligence claim.
 "`Wantonness' is statutorily defined as `[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others.' Ala. Code 1975, § 6-11 20(b)(3). `Wantonness' has been defined by this Court as the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result."
Alfa Mut. Ins. Co. v. Roush, 111 So.2d 1250, 1256 (Ala. 1998). In her reply brief, Pritchett states that she "must acknowledge that Jeff Tisue believed, and apparently continues to believe, that wet gauze is a `safe and adequate means of protecting [a patient's] eyes during the Nlite treatment.'" Accordingly, we conclude that Pritchett has conceded that she has not presented substantial evidence indicating wantonness on the part of Tisue.