32 So.3d 1277 (2009)
DOSTER CONSTRUCTION COMPANY, INC.
v.
MARATHON ELECTRICAL CONTRACTORS, INC.
1061471.
Supreme Court of Alabama.
September 25, 2009.
*1279 Stanley A. Cash and Joseph R. Duncan, Jr., of Huie, Fernambucq & Stewart, Birmingham, for appellant.
Thomas S. Hale and J. Michael Keel of Burgess & Hale, L.L.C., Birmingham, for appellee.
PER CURIAM.
Doster Construction Company, Inc. ("Doster"), appeals from the denial by the Jefferson Circuit Court of Doster's motion to reconsider the summary judgment in favor of Marathon Electrical Contractors, Inc. ("Marathon"), concerning Doster's third-party complaint alleging breach of contract and failure to procure insurance. We affirm in part, reverse in part, and remand.

I. Facts and Procedural History
Doster was the general contractor at a job site for an automobile-parts manufacturer referred to in the record as "Oxford Automotive" in Bessemer. It entered into *1280 a subcontract with Marathon, pursuant to which Marathon was to provide electrical work at the job site. The contract between Doster and Marathon contained two provisions pertinent to this action: an indemnity clause ("the indemnity clause") and a clause concerning the provision of liability insurance ("the liability-insurance clause"). The indemnity clause provides as follows:

"Indemnity. $100.00 of the Subcontract Price is specific consideration for [Marathon's] agreement to defend and indemnify [Doster] and others as provided in this Paragraph. To the fullest extent permitted by law, [Marathon] shall defend and indemnify [Doster], Owner, and Architect, and their respective directors, officers, agents, employees, successors, insurers, sureties, affiliates, and assigns (collectively, the `Indemnitees') against, and assume any obligations of the Indemnitees for, all liabilities, claims, suits, actions, proceedings, damages, losses, judgments, and expenses (collectively, `Indemnified Losses') including, but not limited to attorneys' fees, that arise in any way, directly or indirectly, out of a failure by [Marathon] (including the [Marathon] Design Professionals) to: (a) carry out the Work in a safe manner; (b) strictly comply with any applicable laws, regulations, building codes, rules, or industry standards; (c) exercise reasonable care in the performance of the Work or to execute the Work in a non-negligent manner; or (d) strictly comply with the requirements of this Subcontract. [Marathon's] obligation to defend and indemnify the Indemnitees shall not be diminished or excused merely because the negligence or other breach of a legal duty on the part of any Indemnitee also contributed to the Indemnified Loss. Provided, however, that if in any proceeding initiated by a third party, there is an apportionment of the relative contributions to the Indemnified Loss by the Indemnitees on the one hand, and [Marathon] on the other, then [Marathon] shall only be required to defend and indemnify the Indemnitees to the extent of [Marathon's] proportionate contribution. [Marathon's] obligations under this Paragraph do not limit any other right or obligation of indemnity that exists in favor of any Indemnitee. In the event that a claim is made by an employee of Subcontractor against an Indemnitee, [Marathon] shall defend and indemnify such Indemnitee to the same extent as if such claim were made by a non-employee, notwithstanding any statute or judicial decision that would otherwise limit [Marathon's] liability. If and to the extent that the indemnification provided by this Paragraph should be construed to exceed any restriction established by law, then it is the intent of the parties that this Paragraph be deemed to be reformed and modified such that it affords to the Indemnitees the maximum indemnification allowed by such law, and any terms, words, and provisions of this Paragraph shall be deemed modified or deleted to the extent necessary to make this Paragraph valid and enforceable."
The liability-insurance clause provides, in pertinent part:

"Liability Insurance. [Marathon] shall maintain at its own expense (a) all insurance required by applicable law; (b) all insurance required for subcontractors by the Prime Contract; and (c) the forms of insurance identified below in at least the amounts specified. [Marathon] shall have [Doster] designated and included as an additional insured on all such insurance. Coverage of [Doster] *1281 as an additional insured shall be primary, and not contributory or excess. [Marathon] waives all rights of recovery against [Doster], Owner, and Architect for any loss or damage covered by any insurance, including all rights that might otherwise accrue to any subrogee."
Doster also entered into a subcontract with Steel City, Inc. ("Steel City), pursuant to which Steel City was to provide Doster with the weights and personnel necessary for testing an overhead crane. Though the timing of its execution is disputed by the parties,[1] both parties acknowledge that an employee of Doster signed a one-page invoice for overtime work that contained the following paragraph:
"[Doster] shall defend and indemnify [Steel City] and hold [Steel City] harmless from any and all losses, claims, costs ... and liability for personal injury or any other casualty losses (including property damage) arising from the performance of this Agreement, except in the case of reckless or willful misconduct by [Steel City's] employees or agents who at such time are acting under the authority and control of [Steel City], provided however, during the performance of this Agreement, any and all of [Steel City's] equipment operators, maintenance personnel or other employees or agents whose services are required for the operation of the equipment used hereunder are agreed and deemed to be under the ultimate power and control of [Doster] and as such are `loaned servants.'"
Les Unland was employed by Marathon as an electrician. On July 18, 2003, Steel City employees were testing an overhead crane when it malfunctioned. Unland had finished his work for the day when he was called back to the work site to troubleshoot the electrical system of the crane. In order to fix the problem, Unland used a scissor lift to raise himself to the overhead crane. Upon reaching the "cab" of the crane, Unland lowered to the project floor a remote that operated the crane. After working on the crane, Unland remounted the scissor lift to lower himself back to the floor. Both parties state that a Steel City employee picked up the crane remote and engaged the device, causing the crane to start moving. The crane collided with the scissor lift, knocking it over and causing Unland to fall 25 feet to the project floor. Unland sustained injuries and was taken to the hospital.
Unland sought and received workers' compensation benefits from Marathon for the accident. On July 1, 2004, Unland sued Doster and Steel City, alleging that "Defendants Doster and Steel City placed the crane in motion causing it to push over the scissor lift" and that such action was "negligent, reckless, and careless" and resulted in Unland's injuries. Pursuant to the indemnity clause of the contract between Doster and Marathon, Doster tendered Unland's claims to Marathon, and Marathon, through its insurer, Amerisure Insurance Company, defended Doster. Amerisure eventually settled Unland's claims against Doster for $400,000 in January 2006.
Steel City tendered Unland's claims against it to Doster based on the invoice for overtime work, contending that the invoice constituted a contract for indemnification between Steel City and Doster. Doster refused to defend and indemnify Steel City, and Steel City filed a third-party *1282 cross-claim for defense and indemnification against Doster. Doster tendered the claim to Marathon, but Marathon viewed its defense and indemnity responsibility to have been completed after the settlement of Unland's claims against Doster, and it therefore refused the tender. At the same time, Steel City sought to settle Unland's claims against it, and its insurer, Zurich American Insurance Company ("Zurich"), settled the claims for $600,000 on January 17, 2006.
Following the settlement of Unland's claims against Doster, the counsel Amerisure provided to Doster withdrew and counsel provided by Doster's insurer, which was also Zurich, stepped in to defend Doster on Steel City's cross-claim. On March 29, 2006, Doster filed a third-party complaint against Marathon containing two claims. First, Doster alleged that Marathon had breached the indemnity clause by refusing to defend and indemnify Doster on Steel City's cross-claim. Second, Doster alleged that Marathon had breached the liability-insurance clause by failing to procure insurance coverage for Steel City's cross-claim against Doster.
On February 7, 2007, Marathon moved for a summary judgment as to both claims asserted in Doster's third-party complaint, contending that its contract with Doster did not cover Doster's relationship with Steel City. Doster submitted a response to the motion, along with an affidavit from construction-safety consultant Jerry Gillis. In the affidavit, Gillis testified that, in his opinion, Unland failed to carry out his work in a safe manner, failed to comply with the industry standards, and, in short, failed to meet the standard of care in performing his work. Specifically, Gillis stated that proper procedure required Unland to lock out the controls to the overhead crane or to tag out the electrical-power source to the crane while he was disembarking the crane via the scissor lift. By failing to lock out the controls, Unland did not ensure that he was clear of the path of the crane before others could control it.
After entertaining arguments, the trial court on March 2, 2007, entered a summary judgment in favor of Marathon regarding both of Doster's claims, without explaining its reasons for doing so. Doster then filed a motion to reconsider the judgment. The trial court denied the motion on May 31, 2007. Doster appeals from the judgment of the trial court with respect to both counts of its third-party complaint against Marathon.
In March 2008, Steel City and Doster, through their insurer Zurich, reached a settlement on Steel City's cross-claim for defense and indemnity in the amount of $368,288. Hence, that is the amount Doster seeks on its indemnity claim against Marathon.

II. Standard of Review
"`The standard of review applicable to a summary judgment is the same as the standard for granting the motion...." McClendon v. Mountain Top Indoor Flea Market, Inc., 601 So.2d 957, 958 (Ala.1992).
"`A summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. The burden is on the moving party to make a prima facie showing that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. In determining whether the movant has carried that burden, the court is to view the evidence in a light most favorable to the nonmoving party and to draw all reasonable inferences in favor of that party. To defeat a properly supported *1283 summary judgment motion, the nonmoving party must present "substantial evidence" creating a genuine issue of material fact"evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." Ala.Code 1975, § 12-21-12; West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989).'
"Capital Alliance Ins. Co. v. Thorough-Clean, Inc., 639 So.2d 1349, 1350 (Ala. 1994). Questions of law are reviewed de novo. Alabama Republican Party v. McGinley, 893 So.2d 337, 342 (Ala. 2004)."
Pritchett v. ICN Med. Alliance, Inc., 938 So.2d 933, 935 (Ala.2006).

III. Analysis
The indemnity clause contains broad language. It provides that Marathon will "defend and indemnify" Doster "against, and assume any obligations of [Doster] for, all liabilities, claims, suits, actions, proceedings, damages, losses, judgments, and expenses ... that arise in any way, directly or indirectly" out of, among other things, any "failure by Marathon... to carry out the Work in a safe manner," to "strictly comply with any . . . industry standards," or to "exercise reasonable care in the performance of the Work or to execute the Work in a non-negligent manner." To simplify slightly, the indemnity clause requires Marathon to indemnify Doster for any loss Doster may suffer as a result of any negligence attributable to Marathon. It contains no exception for any loss to which Doster's own negligence may have contributed.[2]
Under the circumstances presented, then, unless the terms of the indemnity clause are in some way ambiguous, we are required to enforce it as it is written.
"Under general Alabama rules of contract interpretation, the intent of the contracting parties is discerned from the whole of the contract. Where there is no indication that the terms of the contract are used in a special or technical sense, they will be given their ordinary, plain, and natural meaning. If the court determines that the terms are unambiguous (susceptible of only one reasonable meaning), then the court will presume that the parties intended what they stated and will enforce the contract as written."
Homes of Legend, Inc. v. McCollough, 776 So.2d 741, 746 (Ala.2000).
"A contractual provision is ambiguous if it is reasonably susceptible of more than one meaning." FabArc Steel Supply, Inc. v. Composite Constr. Sys., Inc., 914 So.2d 344, 357 (Ala.2005). Marathon does not offer any reason why the terms of the indemnity clause would be considered ambiguous, and we find none. Cf. Extermitech, Inc. v. Glasscock, Inc., 951 So.2d 689, 693-94 (Ala.2006) (finding an indemnity provision in a contract to be ambiguous because it did not contain a date specifying when one party's obligation to indemnify *1284 the other became effective, and "each party's interpretation of that provision [was] reasonably plausible").
The indemnity clause contains no language excepting from Marathon's indemnity obligation any loss or liability that may be suffered by Doster only by virtue of Doster's own contractual undertakings, e.g., Doster's own indemnity agreement with a third party such as Steel City, relating to the electrical work at the job site. Instead, it categorically states that Marathon "assume[s] any obligations" of Doster for "all liabilities, claims, [and] losses" that arise directly or indirectly from Marathon's negligence. Thus, the trigger for the indemnity clause is negligence on Marathon's part at the Oxford Automotive job site, and Doster presented undisputed evidence to the trial court that Marathon employee Unland's own negligence contributed to the accident.
Doster's indemnity agreement with Steel City clearly constitutes an obligation of Doster. Doster's settlement with Steel City is a liability incurred as a result of Unland's claim against Steel City for the injury he sustained at the Oxford Automotive job site. Therefore, under a plain and unambiguous reading of the indemnity clause, Steel City's claim against Doster fell within the parameters of the indemnity clause because it concerned a liability of Doster that arose indirectly from negligence attributable to Marathon. Thus, the trial court erred in entering a summary judgment in favor of Marathon concerning Doster's indemnity claim for amounts paid by it to Steel City.
Doster also contends that the trial court erred in entering a summary judgment as to its claim that Marathon failed to procure insurance for the cross-claim made by Steel City.
"Agreements to procure insurance are generally enforceable under Alabama law, and a party who breaches such an agreement is liable for damages resulting from the failure to obtain the promised insurance. . . .
"A contractual obligation to indemnify is distinct from a contractual obligation to procure insurance. Under an agreement to indemnify, the promisor assumes liability for all injuries and damages upon the occurrence of a contingency. In contrast, an agreement to obtain insurance involves the promisor's agreement to obtain or purchase insurance coverage, regardless of whether [a] contingency occurs...."
Goodyear Tire & Rubber Co. v. J.M. Tull Metals Co., 629 So.2d 633, 639 (Ala.1993).
Doster concedes that Marathon named Doster as an additional insured on its policies and that Marathon provided Doster with a certificate of insurance listing it as an additional insured. Marathon's insurance carrier, Amerisure, did, in fact, perform its duties under the insurance policies and the liability-insurance clause as to Unland's claim against Doster, paying Unland $400,000 to settle that claim. Doster argues, however, that Marathon likewise had a duty to procure insurance for Steel City's cross-claim against Doster.
Unlike the indemnity clause, the liability-insurance clause is not sufficiently broad to encompass Steel City's cross-claim against Doster. The liability-insurance clause provides that Marathon must "have [Doster] designated and included as an additional insured" on the policies Marathon was required to obtain for its work at the Oxford Automotive job site. The liability-insurance clause does not state that Marathon was required to procure insurance to insure Doster for liabilities to another Doster subcontractor Doster might contractually assume; Doster cites no provision of the liability-insurance *1285 clause with which Marathon failed to comply in this regard. Marathon named Doster as an additional, primary insured in its policies and provided Doster with proof of that insurance. Under the liability-insurance clause, Marathon performed its duty to procure insurance, and Doster's breach-of-contract claim in this regard necessarily fails.

IV. Conclusion
Based on the foregoing, the trial court erred in entering a summary judgment in favor of Marathon as to Doster's claim alleging breach of contract as to the indemnity clause, while it correctly entered a summary judgment as to Doster's claim alleging breach of contract as to the liability-insurance clause. Accordingly, the trial court's judgment is affirmed in part and reversed in part, and the cause is remanded.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
COBB, C.J., and LYONS, WOODALL, STUART, SMITH, BOLIN, PARKER, and SHAW, JJ., concur.
MURDOCK, J., concurs in part and dissents in part.
MURDOCK, Justice (concurring in part and dissenting in part).
I concur in the Court's affirmance of the trial court's summary judgment in favor of Marathon Electrical Contractors, Inc., concerning the claims against it by Doster Construction Company, Inc., alleging that Marathon breached its contract with Doster by failing to procure insurance for a cross-claim asserted against Doster by Steel City, Inc. I disagree, however, with the Court's conclusion that Marathon breached its contract with Doster when it failed to indemnify Doster for Steel City's claim against Doster.
Contracts "`are construed so as to give effect to the intention of the parties, and, to determine this intent, a court must examine more than an isolated sentence or term; it must read each phrase in the context of all other provisions.'" Celtic Life Ins. Co. v. McLendon, 814 So.2d 222, 224 (Ala.2001) (citations and emphasis omitted). Of even more specific application here is the principle that an indemnity contract should not be "extended to losses or damages neither expressly within its terms, nor of such character that it may reasonably be inferred that the parties intended to covenant against them." Pyle v. Pizitz, 215 Ala. 398, 401, 110 So. 822, 824 (1926).
It is true that Steel City would not have needed to pursue a cross-claim against Doster if not for the fact of a work-site injury to which the contributory negligence of Les Unland, which in turn is imputed to Marathon, indirectly contributed. The specific loss by Doster to Steel City at issue here, however, is not one as to which "it may reasonably be inferred that the parties intended to covenant against."
Under the terms of the indemnity clause, "indemnified loss[es]" are
"all liabilities, claims, suits, actions, proceedings, damages, losses, judgments, and expenses . . . that arise in any way, directly or indirectly, out of a failure by [Marathon] (including the [Marathon] Design Professionals) to: (a) carry out the Work in a safe manner; (b) strictly comply with any applicable laws, regulations, building codes, rules, or industry standards; (c) exercise reasonable care in the performance of the Work or to execute the Work in a non-negligent manner; or (d) strictly comply with the requirements of this Subcontract."
The intent of the parties reflected in this language is for Marathon to indemnify *1286 against any loss that is imposed upon or suffered by an "indemnitee"[3] because of or "out of a failure by [Marathon]" in any one of the above-listed respects. In other words, the trigger for the indemnity clause is wrongful conduct by Marathon that results in a loss being imposed upon an indemnitee.
Unland's complaint alleged that both Doster and Steel City were at fault for his accident. Marathon defended and indemnified Doster for Unland's claim against Doster because Doster was an "indemnitee" and because Marathon believed there was a chance that its own negligence had contributed to the accident. The fact that, according to Unland's allegation, negligence on Doster's part also potentially contributed to the accident would not have excused Marathon from defending and indemnifying Doster because the indemnity clause provided that "Indemnitees shall not be diminished or excused merely because the negligence or other breach of a legal duty on the part of any Indemnitee also contributed to the Indemnified Loss."
Once Unland settled his claims against Doster, however, the only claim remaining against Doster was the claim by Steel City. Significantly, that claim was a result of liability by Steel City to Unland resulting from alleged wrongdoing by Steel City itself. Doster had responsibility to indemnify Steel City for this loss only because, unlike the indemnity clause between Doster and Marathon, Steel City's indemnity agreement with Doster did not require action by a particular party (i.e., negligence by the indemnitor) to trigger the agreement; it simply required Doster to "defend and indemnify [Steel City] and hold [Steel City] harmless from any and all losses, claims, costs ... and liability for personal injury or any other casualty losses... arising from the performance of this Agreement." (Emphasis added.) Thus, Doster undertook to defend and indemnify Steel City even where Steel City might be solely responsible for causing an injury to another; all that was required was for a personal injury or casualty to "arise[] from" the performance of the agreement between Steel City and Doster.[4]
The Court's decision in this case extends coverage of the indemnity clause in the contract between Marathon and Doster beyond the parameters of the parties whose behavior the contract was intended to govern. The contract between Doster and Marathon necessarily concerns the behavior of those two parties and the responsibilities each owes the other in and related to construction activities on the Oxford Automotive project work site.[5] By the terms of the indemnity clause, Marathon agreed to indemnify Doster for Marathon's *1287 negligence at the Oxford Automotive work site and for Doster's negligence if that negligence occurred in conjunction with Marathon's negligence and the negligence resulted in a loss to Doster. Doster's other subcontractors, including Steel City, are not referenced in any way in the indemnity clause.
After Doster and Marathon executed their agreement,[6] Doster assumed a contractual indemnity obligation to Steel City.[7] Steel City's cross-claim against Doster exists only because of Doster's undertaking in that separate agreement. Marathon was not a party to that separate agreement, and the Doster-Marathon indemnity clause contains no indication that it contemplates that separate agreement.
Although the loss suffered by Steel City arguably was caused in some part by the actions of Unland and, therefore, Marathon, Doster is suffering a "loss" associated with Steel City's loss only because of a liberal, unconditional contractual indemnity obligation Doster voluntarily assumed to Steel City. This was a contractual undertaking by Doster to which Marathon was not a party and that, for all appearing, Marathon was not aware would come into existence when it entered into its agreement with Doster. In other words, Marathon's bargain to shoulder more than its share of responsibility as between it and Doster for their respective acts and omissions is one thing. I cannot conclude, however, that Marathon signed any agreement by which it agreed to shoulder responsibility for losses suffered by a third party, at least not without the benefit of defenses, such as contributory negligence, that would normally be available to defend against claims originating in that third party.
By making Marathon liable for the loss of Steel City at issue here only because, without any input or awareness by Marathon, Doster voluntarily took on a 100% indemnification responsibility to Steel City even when the loss is partially or fully Steel City's fault, the Court retroactively incorporates into Marathon's agreement with Doster an obligation not contemplated by that agreement and for which Marathon did not bargain. Marathon is not responsible for the commitment Doster made in its indemnity agreement with Steel City; accordingly, Marathon did not breach the indemnity clause in refusing to defend and indemnify Doster for Steel City's cross-claim against Doster.
In my view, the dispositive principle in this case is the long-established and sound principle I noted at the outset: an indemnity contract should not be "extended to losses or damages neither expressly within its terms, nor of such character that it may reasonably be inferred that the parties intended to covenant against them." Pyle v. Pizitz, 215 Ala. at 401, 110 So. at 824. I conclude that the Court's reading and interpretation *1288 of the indemnity clause in the agreement between Doster and Marathon is not in accordance with this principle. I therefore respectfully must dissent from the Court's conclusion on this issue.
NOTES
[1] Marathon alleges that a Doster employee signed the invoice the day after the accident, without knowing it contained an indemnification agreement. Doster alleges that the invoice was signed before the accident.
[2] Ordinarily, indemnification for an indemnitee's own negligence requires "clear and unequivocal language." Harsco Corp. v. Navistar Int'l Transp. Corp., 630 So.2d 1008, 1011 (Ala. 1993) (citing Industrial Tile, Inc. v. Stewart, 388 So.2d 171, 176 (Ala. 1980)). The indemnification clause at issue here includes the following sentence: "[Marathon's] obligation to defend and indemnify the Indemnitees shall not be diminished or excused merely because the negligence or other breach of a legal duty on the part of any Indemnitee also contributed to the Indemnified Loss." No issue is presented on appeal as to the adequacy of this language.
[3] The "indemnitees" include the "Contractor [Doster], Owner, and Architect, and their respective directors, officers, agents, employees, successors, insurers, sureties, affiliates, and assigns."
[4] As noted in the main opinion, indemnification for an indemnitee's own negligence ordinarily requires "clear and unequivocal language." Harsco Corp. v. Navistar Int'l Transp. Corp., 630 So.2d 1008, 1011 (Ala. 1993) (citing Industrial Tile, Inc. v. Stewart, 388 So.2d 171, 176 (Ala. 1980)). 32 So.3d at 1283 n. 2. Doster never challenged its indemnification agreement with Steel City on this basis, however, so no issue in this regard is before us.
[5] This understanding is consistent with another portion of the indemnity clause, which explains that

"if in any proceeding initiated by a third party, there is an apportionment of the relative contributions to the Indemnified Loss by the Indemnitees on the one hand, and [Marathon] on the other, then [Marathon] shall only be required to defend and indemnify the Indemnitees to the extent of [Marathon's] proportionate contribution."
[6] The parties dispute when the indemnity agreement between Steel City and Doster was executed. Marathon alleges that a Doster employee signed the invoice containing the indemnity agreement the day after the accident in question, without knowing it contained an indemnification agreement. Doster alleges that the invoice was signed before the accident. In either event, there is no dispute that the indemnity agreement between Steel City and Doster was executed over three months after the agreement between Marathon and Doster containing the indemnity clause was executed.
[7] The one-page document is separate from Doster's contract with Steel City, and Doster's contract with Steel City is not in the record. Aside from the paragraph provided above concerning indemnification, the one-page document appears to be a work-order form acknowledging that on July 18 and 19, 2003, Steel City employees worked 11 hours of overtime "test loading" an overhead crane.