[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-15483
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 3, 2010
JOHN LEY
CLERK

D. C. Docket No. 07-01654-CV-2-SLB

RODERICK D. SPEIGNER,

Plaintiff-Appellant,

versus

SHOAL CREEK DRUMMOND MINE,

Defendant-Appellee,

DAVID CAIN,

Defendant.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(November 3, 2010)

Before PRYOR, MARTIN and FAY, Circuit Judges.

PER CURIAM:

Roderick Speigner appeals from the district court's grant of summary judgment in favor of his employer, Shoal Creek Drummond Mine ("Drummond"), on Speigner's claims against Drummond under Title VII and Alabama tort law. These claims stem from Speigner's allegation that his supervisor, David Cain, sexually harassed him at work.[1]  Speigner argues that the district court erred in granting summary judgment in Drummond's favor on his Title VII claims and each of his state tort law claims.  After thorough review, we affirm.

I.

Speigner first argues that the district court erred in granting Drummond's summary judgment motion on Speigner's Title VII claims for sexual harassment and hostile work environment.  We review *de novo* the district court's grant of summary judgment.  Rojas v. Florida, 285 F.3d 1339, 1341 (11th Cir. 2002); Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1357 (11th Cir. 1999).  "Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." 196 F.3d at 1358 (citing Fed. R. Civ. P. 56(c)).  "In making this determination, we . . .

---

[1] Speigner also sued Cain, but the district court granted Cain's motion to quash based on improper service of process and then dismissed Speigner's claims against Cain because the time for service had passed under Fed. R. Civ. P. 4(m).

draw[] all reasonable inferences in the light most favorable to the nonmoving party." Id.

The district court held that Drummond was entitled to summary judgment on Speigner's Title VII claims based on the Faragher defense. See Faragher v. City of Boca Raton, 524 U.S. 775, 807–08, 118 S. Ct. 2275, 2292–93 (1998). When an employer undertakes a tangible adverse employment action against an employee complaining of a hostile work environment created by an immediate supervisor, the employer is subject to vicarious liability. Id. "When no tangible employment action is taken, [however], a defending employer may raise an affirmative defense to liability." Id. To establish this defense, the employer must prove by a preponderance of the evidence: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Id.

Speigner has waived his argument that Drummond is precluded from raising the Faragher defense to Speigner's Title VII claims because he was subjected to a tangible adverse employment action. This Court "has repeatedly held that 'an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court.'" Access Now, Inc., v. Southwest Airlines Co.,

3

385 F.3d 1324, 1331 (11th Cir. 2004) (citation omitted); see also Walton v. Johnson & Johnson Servs., Inc., 347 F.3d 1272, 1283 n.10 (11th Cir. 2003) (declining to address argument regarding alleged tangible adverse employment action "because it was not raised below").  Speigner neglected to allege any tangible adverse employment action in his complaint.  He also failed to argue that an adverse employment action precluded Drummond from invoking the Faragher defense in responding to Drummond's summary judgment motion, in which Drummond expressly relied on this defense.  We decline to address this fact-bound issue that the district court never had a chance to examine.  See 385 F.3d at 1331; 347 F.3d at 1283 n.10.

Speigner also argues that issues of material fact prevent Drummond from prevailing on the merits of its Faragher defense.  First, Speigner argues that a reasonable jury could find that Drummond failed to exercise reasonable care to prevent and promptly correct Cain's behavior.  "The Supreme Court [in Faragher] implied that employers could meet the initial burden in determining whether they had exercised reasonable care to prevent sexual harassment by promulgating an anti-harassment policy."  Madray v. Publix Supermarkets, Inc., 208 F.3d 1290, 1297–98 (11th Cir. 2000) (citation omitted).  The employer must show "that its sexual harassment policy was effectively published, that it contained reasonable

4

complaint procedures, and that it contained no other fatal defect." Frederick v. Sprint/United Mgmt. Co., 246 F.3d 1305, 1314 (11th Cir. 2001).

We conclude that Drummond exercised reasonable care to prevent and promptly correct Cain's behavior. See Madray, 208 F.3d at 1298–1300. Speigner admits that Drummond has an anti-harassment policy which expressly proscribes sexual harassment, including, but not limited to, the very acts Cain committed: "unwelcome sexual advances," "verbal or physical conduct of a sexual nature," "sexually oriented jokes," and "unwelcome touching." The written policy allows the complaining employee to report the harassment to company officials other than the employee's supervisor in the event that the supervisor is the harasser. See Madray, 208 F.3d at 1298 (discussing importance of policy which encourages victims to come forward without requiring victim to complain first to the offending supervisor). Speigner signed an acknowledgment form when he began his employment stating that Drummond had informed him of this policy. In sworn declarations, Drummond's general mine manager explained that the anti-harassment policy is widely disseminated and Cain reported that he received periodic training on the policy. Drummond also promptly ameliorated the situation as soon as Speigner informed the general mine manager, Richard Painter, of the harassment. Painter met with Cain, interviewed him, and counseled him to avoid

5

harassing conduct in the future. Painter then moved Speigner off of Cain's crew to one with a different supervisor, without any change in Speigner's pay or hours.

We also reject Speigner's argument that genuine issues of material fact exist as to whether he unreasonably failed to take advantage of Drummond's preventive or corrective opportunities. To preclude a finding that an employee failed to take advantage of preventive or corrective measures "an employee must comply with the reporting rules and procedures her employer has established." Baldwin v. Blue Cross/Blue Shield of Ala., 480 F.3d 1287, 1306 (11th Cir. 2007). Speigner admits that he never followed Drummond's sexual harassment complaint procedures. Speigner made an oral complaint to the union steward but never reported the harassment to the officials identified in Drummond's published sexual harassment reporting procedures. Also, Speigner's argument that he asked the union steward not to process the grievance because he feared retaliation does not help his case. "Subjective fears of reprisal . . . standing alone, do not excuse an employee's failure to report a supervisor's harassment." Walton, 347 F.3d at 1291. For these reasons, we conclude that the district court did not err in granting summary judgment in favor of Drummond on Speigner's Title VII claims.

## II.

Speigner also asks this Court to reverse the district court's grant of summary

judgment on his state law claims of assault and battery, invasion of privacy, and intentional infliction of emotional distress because a genuine issue of fact remains as to whether Drummond ratified Cain's conduct.

Alabama law provides that an employer is liable for the intentional torts of its agents only if the plaintiff offers evidence that: "(1) the agent's wrongful acts were in the line and scope of his employment; or (2) that the acts were in furtherance of the business of the employer; or (3) that the employer participated in, authorized, or ratified the wrongful acts." Potts v. BE & K Constr. Co., 604 So. 2d 398, 400 (Ala. 1992) (quotation marks, alterations, and citation omitted). To prove that the employer ratified the wrongful acts:

> a complaining employee must show that the employer (1) had actual knowledge of the tortious conduct of the offending employee and that the tortious conduct was directed at and visited upon the complaining employee; (2) that based on this knowledge, the employer knew, or should have known, that such conduct constituted sexual harassment and/or a continuing tort; and (3) that the employer failed to take 'adequate' steps to remedy the situation.

Id.

No reasonable jury could find that Drummond ratified Cain's sexually harassing conduct. Speigner has failed to prove that Drummond had actual knowledge of Cain's tortious conduct at any time before he reported the conduct to the general mine manager. As soon as Drummond, through its mine manager,

7

learned of the alleged harassment, Drummond took adequate steps to remedy the situation by investigating the claim, counseling Cain to avoid such conduct in the future, and arranging for Speigner to work under a different supervisor. We conclude that the district court committed no error in granting Drummond's summary judgment motion on the state law claims of assault and battery, invasion of privacy, and intentional infliction of emotional distress.[2]

### III.

Speigner also argues that this Court should reverse the district court's grant of summary judgment on his state law claims of negligent or malicious retention, training, and supervision because he has established facts sufficient to create a jury question as to whether Drummond should have known about the harassment. To recover on negligent supervision and training claims against an employer, "[a] plaintiff must establish 'by affirmative proof' that the employer actually knew of

---

[2] We decline to consider Speigner's argument raised for the first time in his reply brief that under Alabama law Drummond had imputed knowledge of Cain's conduct because the union steward was acting as Drummond's agent when Speigner reported the harassment. "This Court . . . repeatedly has refused to consider issues raised for the first time in an appellant's reply brief" and issues raised for the first time at the appellate level. United States v. Levy, 379 F.3d 1241, 1244 (11th Cir. 2004); see Walton, 347 F.3d at 1283 n.10. Speigner did not articulate the theory that the union representative constituted Drummond's agent in his initial brief and cites the authority for this proposition for the first time in his reply brief. Rather, Speigner argued in his initial brief that his report to the union steward was sufficient to raise an issue of material fact as to whether Drummond had knowledge of the harassment because the steward told Speigner that union representatives were addressing the issue with Drummond's management personnel. In his complaint and summary judgment response, Speigner never referred to the union steward as Drummond's agent or argued that Drummond had "imputed knowledge" of the harassment.

the incompetence [of the employee], or that the employer reasonably should have known of it." Southland Bank v. A & A Drywall Supply Co., 21 So. 3d 1196, 1215–16 (Ala. 2008) (citation omitted) (explaining that claims for negligent supervision and training are treated as one claim subject to the same standard); see also Pritchett v. ICN Med. Alliance, Inc., 938 So. 2d 933, 940 (Ala. 2006) (same). The plaintiff meets this burden by either showing "specific acts of incompetency and bringing them home to the knowledge of the master, or by showing them to be of such nature, character, and frequency that the master, in the exercise of due care, must have had them brought to his notice." Lane v. Cent. Bank of Ala., N.A., 425 So. 2d 1098, 1100 (Ala. 1983) (citation omitted); see also Armstrong Bus. Servs., Inc. v. AmSouth Bank, 817 So. 2d 665, 682 (Ala. 2001).

Likewise, a claim for wanton supervision requires the plaintiff to establish by affirmative proof that the employer actually knew of the employee's incompetence or reasonably should have known of it.[3] See AmSouth Bank, 817 So. 2d at 683. "'Wanton supervision' requires that the employer wantonly disregard its agent's incompetence." Id. at 682. Wanton conduct constitutes "the conscious doing of some act or the omission of some duty, while knowing of the

---

[3] We treat Speigner's claim for malicious retention, training, and supervision as one for wanton retention, training, and supervision, which is a recognized tort under Alabama law. See, e.g., Pritchett, 938 So. 2d at 941–42.

9

existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result." Pritchett, 938 So. 2d at 941 (citation omitted); see also Ala. Code § 6-11-20(b)(3).

We conclude that no reasonable jury could find that Drummond negligently or wantonly trained, supervised, or retained Cain. Cain received periodic training on the company's anti-harassment policies. The employees Speigner identified as witnesses all denied that they ever saw Cain sexually harassing or acting inappropriately toward Speigner. Cain denied Speigner's allegations when Drummond investigated, and Drummond had received no other complaints of sexual harassment against Cain. Although Speigner reported Cain's conduct to the union steward, he dropped his grievance. He waited to inform Drummond's general mine manager until after the last alleged incident of harassment had occurred. The district court did not err in granting summary judgment on Speigner's negligent or malicious retention, training, and supervision claims.

For these reasons, we AFFIRM.