Rel: March 10, 2023

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2022-2023

—————————————

### SC-2022-0564

—————————————

### Erica Rae Fox

v.

### Harold V. Hughston III and Sheila Morgan

**Appeal from Colbert Circuit Court**
**(CV-21-900257)**

PER CURIAM.

In this legal-malpractice action, Erica Rae Fox appeals from a

summary judgment entered by the Colbert Circuit Court in favor of her

former criminal-defense attorneys, Harold V. Hughston III and Sheila Morgan ("the defense attorneys"). The trial court determined that the applicable statute of limitations barred Fox's action. We affirm.

Facts and Procedural History

On August 12, 2016, Ronnie Credille murdered Fox's husband, Jason Fox. Credille shot Jason in the head as he entered the doorway of the residence that he shared with Fox and their children. Fox and Credille were alleged to have been involved in an adulterous relationship. A grand jury indicted Fox for capital murder on January 12, 2017. Fox was accused of arranging for Credille to murder Jason so that she could collect the proceeds from Jason's life-insurance policy. The trial court presiding over the criminal action declared Fox indigent and appointed the defense attorneys to represent her. On October 26, 2018, at the conclusion of a five-day jury trial, the jury convicted Fox of capital murder, and, on November 28, 2018, she was sentenced to life imprisonment without the possibility of parole.

The transcript of Fox's trial indicates that, on October 26, 2018, after the jury had reached its verdict and the trial court had polled the jury members, Morgan provided an oral notice of appeal in open court.

2

Rule 3(a)(2), Ala. R. App. P., however, provides that,

> "[i]n criminal cases, an appeal permitted by law as a matter of right to an appellate court shall be taken by filing a written notice of appeal with the clerk of the trial court within the time allowed by Rule 4, [Ala. R. App. P.,] or by the defendant's giving an oral notice of appeal <u>at the time of sentencing</u>, which oral notice shall be noted of record …."

(Emphasis added.) Fox contends that, at the conclusion of the sentencing hearing, she made it clear to the defense attorneys that she wanted to appeal her conviction and sentence and that they represented to her that a notice of appeal had been perfected. Despite that representation, there is no oral notice of appeal contained in the transcript of the sentencing hearing.

On December 28, 2018, the defense attorneys filed a motion for a new trial on Fox's behalf. That motion was denied by operation of law on January 28, 2019. See Rule 24.4, Ala. R. Crim. P.[1] Nevertheless, the trial court held a hearing on the motion for a new trial on March 7, 2019. At

---

[1]Rule 24.4 provides, in pertinent part: "No motion for new trial … shall remain pending in the trial court for more than sixty (60) days after pronouncement of sentence …." In this case, the 60th day after pronouncement of sentence was January 27, 2019; however, because that day was a Sunday, the motion was deemed denied on Monday, January 28, 2019. See Rule 1.3(a), Ala. R. Crim. P.; <u>Bryant v. State</u>, 29 So. 3d 928, 935 n.4 (Ala. Crim. App. 2009).

the conclusion of the hearing, the trial court entered an order purportedly denying the motion for a new trial. After January 28, 2019, however, the trial court did not have jurisdiction to rule on the motion for a new trial, and therefore its order purporting to deny the motion was void. See Edgar v. State, 646 So. 2d 683 (Ala. 1994). The transcript of the hearing on the motion for a new trial reflects that Morgan again provided an oral notice of appeal in open court. Neither oral notice of appeal was effective because neither was given at the time of sentencing. See Rule 3(a)(2), Ala. R. App. P. See also Ex parte Soule, 892 So. 2d 879, 880 n.1 (Ala. 2004) ("An oral notice of appeal is effective only if it is made at the time of sentencing.").

Because the deadline by which Fox was required to file a written notice of appeal of her conviction and sentence is calculated from the date on which her motion for a new trial was denied by operation of law, her written notice of appeal was due to be filed on or before March 11, 2019. See Rule 4(b)(1), Ala. R. App. P. The record in Fox's criminal case, which Hughston provided as an exhibit to his motion for a summary judgment in this case, does not contain a timely written notice of appeal.

After the trial court heard Fox's motion for a new trial, the defense

4

attorneys filed a motion to withdraw from representing Fox. The trial court granted the defense attorneys' motion to withdraw on March 25, 2019, but it was not until April 1, 2019, that the trial court appointed Charlie Bottoms as appellate counsel to represent Fox in her anticipated appeal. Bottoms promptly filed a written notice of appeal on Fox's behalf on April 2, 2019. The record in Fox's criminal case reflects that this was the first written notice of appeal filed therein. On April 11, 2019, the Alabama Court of Criminal Appeals entered an order requiring Fox to show cause why her appeal should not be dismissed on the ground that her notice of appeal was not timely filed. Bottoms filed a response in which he contended that Fox's appeal should not be dismissed because, he argued, "[Fox] and/or her trial council [sic] gave an oral notice of appeal at the sentencing hearing." The Court of Criminal Appeals stayed the appeal on June 5, 2019.

Bottoms then filed a motion to reinstate the appeal or, in the alternative, to order a new sentencing hearing for Fox. Bottoms stated: "The undersigned attorney has reviewed the transcript of the sentencing hearing provided to him and the record does not reflect that [Fox] gave an oral notice of appeal at the sentencing hearing." On July 17, 2019, the

Court of Criminal Appeals dismissed Fox's appeal as untimely. <u>Fox v. State</u> (No. CR-18-0670, July 17, 2019). That court held that Morgan's oral notice of appeal after the jury returned its verdict was ineffective and, therefore, that Bottoms's written notice of appeal was not timely filed. Bottoms filed an application for rehearing; that court overruled the application on August 5, 2019. Bottoms then filed a petition for a writ of certiorari with this Court. We granted the petition, but on December 20, 2019, we quashed the writ, <u>Ex parte Fox</u> (No. 1180913, Dec. 20, 2019), 316 So. 3d 232 (Ala. 2019) (table), and, on the same date, the Court of Criminal Appeals certified its judgment of dismissal as final.

Meanwhile, on August 12, 2019, Fox wrote a letter to Morgan. The letter stated, in pertinent part:

> "I do not understand the fact of the notice of appeal at my sentencing hearing can't be found and is not documented, and apparently we are out of time for my direct appeal. I know you do not represent me any more, but you did then. Can you please write me back and let me know (explain) what is going on."

Fox submitted an affidavit she executed on February 28, 2022, as evidence in the legal-malpractice action ("the 2022 affidavit"). She testified as follows in the 2022 affidavit:

> "Around February 1, 2020, I learned that my appeal had

6

been dismissed by the appellate court because the appeal had been untimely filed. I was unsure whether Attorneys Hughston and Morgan, or Attorney Bottoms, had failed to timely file the appeal. Nor did I know I had a potential claim against Attorneys Hughston and Morgan for not timely filing my appeal. I knew I needed to have an attorney look into the matter for me."

Fox and her parents retained attorney Richard Bite on February 14, 2020, to pursue postconviction relief on her behalf. She testified in the 2022 affidavit that, to her knowledge, Bite never filed the petition necessary to commence postconviction proceedings pursuant to Rule 32, Ala. R. Crim. P. Fox and her parents have filed a separate complaint against Bite alleging legal malpractice, fraud, conversion, and breach of contract.

Fox further testified in the 2022 affidavit that, on or about September 22, 2021, she retained attorney Jerry Blevins, her counsel in this case, "to look into [her] case and to pursue post-conviction relief." Fox then testified that it was not until on or about October 1, 2021, that she "learned that [her] appeal [had been] dismissed because the oral notice of appeal given by Attorney Morgan [had been] ineffective and learned for the first time that [she] had a claim against Attorneys Hughston and Morgan regarding the handling of [her] case."

7

On November 5, 2021, Fox sued the defense attorneys under the Alabama Legal Services Liability Act ("the ALSLA"), § 6-5-570 et seq., Ala. Code 1975, alleging legal-malpractice claims. Fox alleged that the defense attorneys had failed to file a proper and timely notice of appeal in Fox's criminal case and that they had misrepresented to her that a proper notice of appeal had been given. On November 22, 2021, Fox filed a petition pursuant to Rule 32, Ala. R. Crim. P., seeking to pursue an out-of-time appeal in her criminal case because, she alleged, the defense attorneys had failed to timely perfect her appeal in that case. Fox's postconviction case is proceeding separately.

The defense attorneys filed answers and moved to dismiss the complaint in the legal-malpractice action. The defense attorneys each filed a motion for a summary judgment, asserting, among other arguments, that Fox's claims were barred by the two-year statute of limitations set out in § 6-5-574, Ala. Code 1975, which is a part of the ALSLA. Fox filed a motion for a partial summary judgment as to liability and as to a portion of her alleged damages, as well as a motion to strike certain evidence offered in opposition to her summary-judgment motion. The trial court set all motions for a hearing. On March 24, 2022, the trial

court entered a final judgment granting the defense attorneys' summary-judgment motions, denying Fox's summary-judgment motion, and denying Fox's motion to strike. Fox appealed.

Standard of Review

"'"This Court's review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So. 2d 72, 74 (Ala. 2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So. 2d 949, 952-53 (Ala. 2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So. 2d 756, 758 (Ala. 1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce 'substantial evidence' as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So. 2d 794, 797-98 (Ala. 1989); Ala. Code 1975, § 12-21-12. '[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assur. Co. of Fla., 547 So. 2d 870, 871 (Ala. 1989)."'"

Gooden v. City of Talladega, 966 So. 2d 232, 235 (Ala. 2007) (quoting Prince v. Poole, 935 So. 2d 431, 442 (Ala. 2006), quoting in turn Dow v. Alabama Democratic Party, 897 So. 2d 1035, 1038-39 (Ala. 2004)). "Questions of law are reviewed de novo." Pritchett v. ICN Med. All. Inc.,

938 So. 2d 933, 935 (Ala. 2006).

Analysis

The dispositive issue in this case is whether Fox timely commenced her legal-malpractice action against the defense attorneys. As noted by the parties on appeal, there is a split of authority in our caselaw concerning when the statute-of-limitations period for a legal-malpractice action will begin to run. On the one hand, our caselaw has applied the "damage" approach, under which the limitations period begins to run from the date on which the client bringing the legal-malpractice action first sustained an injury or damage. On the other hand, our caselaw also has applied the "occurrence" approach, under which the limitations period begins to run from the date on which the act or omission giving rise to the claim occurred and not when the client first suffered damage. As demonstrated below, however, we need not elect between these approaches in the present case because, given the undisputed facts, the limitations period provided in the ALSLA bars Fox's legal-malpractice action against the defense attorneys regardless of which approach is applied.

"When a claim accrues, for statute-of-limitations purposes, is a

question of law if the facts are undisputed and the evidence warrants but one conclusion." Kindred v. Burlington N. R.R., 742 So. 2d 155, 157 (Ala. 1999). Fox argues that when the facts are disputed, as she alleges they are here, the question of accrual of a cause of action for statute-of-limitations purposes is a question of fact that should be decided by a jury, citing Jim Walter Homes, Inc. v. Kendrick, 810 So. 2d 645, 750 (Ala. 2001). Despite Fox's argument to the contrary, we find the relevant facts to be clear and unequivocal; therefore, the dispositive issue here is a question of law to be reviewed de novo. See Pritchett, 938 So. 2d at 935.

Any action against a licensed attorney that arises in whole or in part from his or her provision of legal services is governed by the ALSLA. Price v. Ragland, 966 So. 2d 246, 259 (Ala. 2007). Section 6-5-572(1), Ala. Code 1975, which is a part of the ALSLA, provides, in pertinent part:

> "A legal service liability action embraces all claims for injuries or damages or wrongful death whether in contract or in tort and whether based on an intentional or unintentional act or omission. A legal service[ ] liability action embraces any form of action in which a litigant may seek legal redress for a wrong or injury and every legal theory of recovery, whether common law or statutory, available to a litigant in a court in the State of Alabama now or in the future."

With regard to the timing for commencing such an action, § 6-5-574 provides:

11

"(a) All legal service liability actions against a legal service provider must be commenced within two years after the act or omission or failure giving rise to the claim, and not afterwards; provided, that if the cause of action is not discovered and could not reasonably have been discovered within such period, then the action may be commenced within six months from the date of such discovery or the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier; provided, further, that in no event may the action be commenced more than four years after such act or omission or failure; except, that an act or omission or failure giving rise to a claim which occurred before August 1, 1987, shall not in any event be barred until the expiration of one year from such date.

"(b) Subsection (a) of this section shall be subject to all existing provisions of law relating to the computation of statutory periods of limitations for the commencement of actions, namely, Sections 6-2-1, 6-2-2, 6-2-3, 6-2-5, 6-2-6, 6-2-8, 6-2-9, 6-2-10, 6-2-13, 6-2-15, 6-2-16, 6-2-17, 6-2-30, and 6-2-39[, Ala. Code 1975]; provided, that notwithstanding any provisions of such sections, no action shall be commenced more than four years after the act, omission, or failure complained of; except, that in the case of a minor under four years of age, such minor shall have until his or her eighth birthday to commence such action."

Section 6-5-574(a) requires that an action "must be commenced within two years after the act or omission or failure giving rise to the claim." Moreover, this section allows for a remedial filing deadline of six months from the date when the plaintiff discovers the cause of action or the date when the plaintiff discovers facts that would reasonably lead to such discovery if the cause of action was not known to the plaintiff during

12

the two-year limitations period ("the savings provision"). Section 6-5-574(b) also subjects the two-year limitations period to other statutes regarding the computation of statutory limitations periods.

In Denbo v. DeBray, 968 So. 2d 983 (Ala. 2006), this Court discussed the two different approaches used to determine when a cause of action in an ALSLA case accrues and the limitations period begins to run. In Denbo, the Court recognized the "damage" approach applied in Floyd v. Massey & Stotser, P.C., 807 So. 2d 508 (Ala. 2001), relying in part on Michael v. Beasley, 583 So. 2d 245 (Ala. 1991), under which the limitations period begins to run from the date on which the client bringing the legal-malpractice action sustained an injury or damage. The Denbo Court also recognized the "occurrence" approach applied in Ex parte Panell, 756 So. 2d 862 (Ala. 1999) (plurality opinion), and Ex parte Seabol, 782 So. 2d 212 (Ala. 2000), under which the limitations period begins to run from the date that the act or omission giving rise to the claim occurred and not when the client first suffered damage. Although the Denbo Court recognized the split of authority as to when a legal-malpractice action accrues, it did not elect to resolve the split. Instead, the Court held that under either the damage approach or the occurrence

approach, the client's complaint was untimely. 968 So. 2d at 988-89. The Court took the same approach in Coilplus-Alabama, Inc. v. Vann, 53 So. 3d 898, 905-07 (Ala. 2010).

In the present case, the defense attorneys argued in the trial court that, under both the damage approach and the occurrence approach, Fox's claims "accrued at the latest on March 11, 2019, when Fox allegedly lost her right to appeal her underlying conviction and sentence based upon a written notice of appeal not having been filed." Therefore, they argued, Fox had two years from March 11, 2019, in which to commence her legal-malpractice action under the ALSLA. The defense attorneys also argued that Fox learned that she had cognizable legal-malpractice claims against the defense attorneys no later than August 12, 2019, the date on which Fox wrote to Morgan inquiring about issues with her appeal. Therefore, they argued, under the savings provision, Fox had six months from August 12, 2019, in which to commence her legal-malpractice action. Because Fox did not commence her legal-malpractice action until November 5, 2021, the defense attorneys argued, Fox's claims were time-barred.

Fox asserts, however, that the defense attorneys failed to recognize

the distinction between the damage approach and the occurrence approach. Under the occurrence approach, she says, the act of malpractice occurred on March 11, 2019, the deadline for filing a written notice of appeal in her criminal case. Fox concedes that, absent the savings provision, her claims would be time-barred under the occurrence approach. Fox insists instead that it is the damage approach that applies to her case and that the legal damage resulting from the defense attorneys' failure to file a proper notice of appeal occurred on December 20, 2019, when this Court quashed its previously issued writ of certiorari in her criminal case and the Court of Criminal Appeals certified its judgment of dismissal as final. After that, Fox says, she then had two years in which to commence her legal-malpractice action.

In support of her argument, Fox relies on Brewer v. Davis, 593 So. 2d 67 (Ala. 1991). In Brewer, the plaintiffs commenced a legal-malpractice action that arose out of legal services provided in a will-contest proceeding. The plaintiffs' attorney filed a petition to remove the estate from the probate court to the circuit court and then amended the removal petition to assert grounds to contest the will. The case proceeded to a trial in which the jury returned a verdict against the proponent of

15

the will, i.e., the executrix of the decedent's estate, and the circuit court entered a judgment for the plaintiffs. The executrix of the will appealed, and this Court reversed the circuit court's judgment, holding that the amended removal petition was not a proper complaint asserting a will-contest claim and, therefore, that the circuit court had not obtained jurisdiction over the will contest. See Bullen v. Brown, 535 So. 2d 76 (Ala. 1988).

The plaintiffs then filed an ALSLA action in which they alleged that their attorneys had committed legal malpractice in the will-contest proceeding. The trial court entered a summary judgment holding that the plaintiffs' action was untimely. This Court reversed that judgment and held:

> "In Michael v. Beasley, 583 So. 2d 245 (Ala. 1991), this Court held that the time limits set out in the Legal Services Liability Act, Ala. Code 1975, § 6-5-570 et seq., are to be measured from the date of the accrual of the cause of action, not from the date of the occurrence of the act or omission, and that a cause of action accrues when some injury occurs giving rise to a cause of action. In that case, we concluded that the Michaels sustained a legal injury sufficient for them to maintain an action at the time a jury verdict was returned against them and that their cause of action accrued at that time, not when this Court affirmed the trial court's judgment.
>
> "In the present case, we find that the plaintiffs sustained a legal injury sufficient for them to maintain an

16

action against the [attorneys] when this Court overruled the application for rehearing in Bullen v. Brown, [535 So. 2d 76 (Ala. 1988)]. In this case, unlike Michael v. Beasley, supra, the jury returned a verdict in favor of the plaintiffs and the plaintiffs sustained no loss or injury until this Court reversed the trial court's judgment and overruled the [rehearing] application [in Bullen]."

Brewer, 593 So. 2d at 68-69.

Fox contends that the defense attorneys were under the mistaken impression that the oral notice of appeal Morgan provided after the jury returned its verdict was sufficient to perfect Fox's appeal and that Bottoms arguably thought the same because, she says, he sought review of that issue in the certiorari petition challenging the judgment dismissing Fox's appeal to the Court of Criminal Appeals. Fox argues that the issue was not resolved until December 20, 2019, when this Court entered an order quashing the writ of certiorari and the Court of Criminal Appeals certified its judgment dismissing her appeal of her conviction and sentence as final.

The defense attorneys recognize in this appeal this Court's split of authority regarding when the limitations period for a legal-malpractice action begins to run. They argue, however, that it is unnecessary for this Court to resolve the split at this time because, they say, given the

17

undisputed facts of this case, the statute of limitations in § 6-5-574 bars Fox's claims under either approach. The defense attorneys maintain that Fox's November 5, 2021, complaint was filed far outside the applicable two-year limitations period.

Fox concedes on appeal that, absent the savings provision, her legal-malpractice action is barred under the occurrence approach. Therefore, we must examine whether her action is timely under the damage approach or the savings provision. The defense attorneys maintain that the limitations period began to run under the damage approach on March 11, 2019, when Fox lost her right to appeal and first suffered legal damage, not on December 20, 2019, when this Court quashed the writ of certiorari and the Court of Criminal Appeals certified its judgment of dismissal as final. The defense attorneys rely on Sirote & Permutt, P.C. v. Bennett, 776 So. 2d 40, 45 (Ala. 2000) (quoting Michael, 583 So. 2d at 251) ("[E]ven though the plaintiffs' losses 'may have been compounded subsequently by virtue of the effect' of the judgment …, the plaintiffs' causes of action accrued when each plaintiff first sustained appreciable legal damage."). Fox insists that before December 20, 2019, she had no reason to believe that the courts would not allow her appeal

18

to proceed; therefore, she argues, she did not sustain legal damage until then and her legal-malpractice action, commenced on November 5, 2021, within two years of December 20, 2019, was timely.

As was the case in <u>Denbo</u> and in <u>Coilplus</u>, there is no need in the present case for this Court to elect between the occurrence approach and the damage approach because Fox's claims are untimely under either approach. Fox's claims clearly are barred under the occurrence approach. The act or omission giving rise to Fox's claims was the defense attorneys' failure to file a proper notice of appeal in her criminal case. That act or omission occurred no later than March 11, 2019, the date on which a written notice of appeal would have been due. Fox filed her complaint on November 5, 2021, after the two-year limitations period had run.

Fox's action is also time-barred under the damage approach. Fox first suffered legal damage on March 11, 2019, when the defense attorneys did not observe the deadline for filing her appeal in the criminal case and she lost her right to appeal.[2] Although we need not

_____

[2]Fox argues that this analysis conflates the damage approach and the occurrence approach. In other words, she argues that these approaches must yield different dates/results. She is mistaken. It is possible (but not necessary) that the act of legal malpractice can occur on

consider it, legal damage also occurred on July 17, 2019, when the Court of Criminal Appeals dismissed her appeal. "A cause of action accrues as soon as the claimant is entitled to maintain an action, regardless of whether the full amount of the damage is apparent at the time of the first legal injury." Chandiwala v. Pate Constr. Co., 889 So. 2d 540, 543 (Ala. 2004); Kelly v. Shropshire, 199 Ala. 602, 605, 75 So. 291, 292 (1917) (holding that the limitations period "begins to run from the time the act is committed, be the actual damage (then apparent) however slight, and the statute will operate to bar a recovery not only for the present damages but for damages developing subsequently …." ) (emphasis added)). Thus, we do not find persuasive Fox's argument that she did not sustain legal damage until this Court entered its judgment on December 20, 2019.

Fox next argues that, even if her claims are time-barred under both the occurrence approach and the damage approach, the savings provision extended the limitations period. Fox contends that she did not learn that she had cognizable legal-malpractice claims against the defense attorneys until October 1, 2021; therefore, she argues, under the savings

---

one date and the result (i.e., the damage or injury) can occur on a different date.

provision, she had six months from that date in which to commence her legal-malpractice action. The defense attorneys contend that it is clear from Fox's letter to Morgan that she knew by August 12, 2019, at the latest, that the defense attorneys had not filed a written notice of appeal in her criminal case. By that time, the defense attorneys argue, Fox had actual knowledge of facts that reasonably would have led to the discovery of her legal-malpractice claims. Moreover, the defense attorneys say, Fox has not offered any evidence to support even an inference that her claims "could not reasonably have been discovered within [the two-year limitations] period." § 6-5-574(a). They conclude that Fox cannot invoke the savings provision because it applies only if the cause of action was not discovered and could not reasonably have been discovered within the two-year limitations period.

Fox points out the portion of her August 12, 2019, letter in which she wrote that she did not understand why a notice of appeal was not documented in the transcript of her sentencing hearing. She argues that, contrary to the defense attorneys' argument, the letter proves that she did not then know that she had cognizable legal-malpractice claims because, she says, she thought that Morgan had given a proper notice of

appeal at the transcript of the sentencing hearing. We disagree.

Fox's August 12, 2019, letter shows that Fox was aware by that date that the transcript of the sentencing hearing in her criminal case did not contain a notice of appeal and that the time in which she could appeal her criminal case as a matter of right had expired. Accordingly, Fox had knowledge of facts that reasonably should have led her to discover that she had legal- malpractice claims against the defense attorneys. Therefore, the savings provision provided her six months from that date -- or until February 12, 2020 -- to commence her legal-malpractice action. Because Fox did not commence her action until November 5, 2021, however, the savings provision does not provide relief.

Finally, in the alternative, Fox argues that the defense attorneys' misrepresentation to her that they had given a proper notice of appeal after the jury had returned its verdict tolled the two-year limitations period under § 6-5-574(a). As stated previously in this opinion, § 6-5-574(b) makes the provisions of subsection (a) "subject to all existing provisions of law relating to the computation of statutory periods of limitations for the commencement of actions," including § 6-2-3, Ala. Code 1975. Section 6-2-3 is applicable to fraud claims and provides:

22

"In actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute his action."

This Court has previously held that the tolling provision of § 6-2-3 applies in ALSLA actions. See Leighton Ave. Off. Plaza, Ltd. v. Campbell, 584 So. 2d 1340, 1344 (Ala. 1991).

Fox had the burden of proving that her fraud claim comes within the tolling provision of § 6-2-3. Seabol, 782 So. 2d at 215. Fox contends that she did not learn that she had cognizable legal-malpractice and fraud claims against the defense attorneys until on or about October 1, 2021. In support of her contention, Fox points to the 2022 affidavit in which she stated that on or about February 1, 2020, she learned that her appeal in the criminal case had been dismissed because a notice of appeal had not been timely filed, that she was not sure which attorney was at fault, that she did not know at that time that she had a potential claim against the defense attorneys for mishandling her case, and that she did not learn that she had cognizable legal-malpractice claims against the defense attorneys until on or about October 1, 2021. She maintains that, based on this alleged October 1, 2021, discovery date, her legal-

malpractice action was commenced well within the two-year period set out in § 6-2-3 and within the four-year bar applicable to all claims brought under the ALSLA. At the very least, Fox argues, when she learned about her potential causes of action is a disputed issue of fact that made the entry of a summary judgment improper.

The limitations period applicable to fraud claims under § 6-2-3 begins to run when a party actually discovers the fraud or when he or she <u>learns of facts</u> that would have caused a reasonable person to inquire further. <u>Dickinson v. Land Devs. Constr. Co.</u>, 882 So. 2d 291, 298 (Ala. 2003). Fox's August 12, 2019, letter provides evidence in her own words that she had actual knowledge as of that date that the defense attorneys' representation that they had filed a notice of appeal on her behalf was false. Moreover, ordinary diligence would have required inquiry on Fox's part about the facts underlying the defense attorneys' alleged representations to her that her appeal had been properly perfected.

> "A cause of action for fraud accrues, and 'the limitations period begins to run[,] when the plaintiff was privy to facts which would "'provoke inquiry in the mind of a [person] of reasonable prudence, and which, if followed up, would have led to the discovery of the fraud.'"' <u>Auto-Owners Ins. Co. v. Abston</u>, 822 So. 2d 1187, 1195 (Ala. 2001) (quoting <u>Willcutt v. Union Oil Co.</u>, 432 So. 2d 1217, 1219 (Ala. 1983), quoting in turn <u>Johnson v. Shenandoah Life Ins. Co.</u>, 291 Ala. 389, 397,

24

281 So. 2d 636, 643 (1973))."

Ex parte Dow AgroSciences LLC, 299 So. 3d 952, 959 (Ala. 2020). Under these circumstances, tolling under § 6-2-3 would have ended no later than August 12, 2019, and, thus, Fox's action is untimely.

## Conclusion

Because Fox's legal-malpractice action was untimely under the ALSLA and because she failed to demonstrate that the tolling provision in § 6-2-3 applies in her case, we affirm the trial court's summary judgment in favor of the defense attorneys. Given our resolution of this issue, we need not address the other arguments made by the parties.

AFFIRMED.

Shaw, Wise, Bryan, Stewart, and Cook, JJ., concur.

Mitchell, J., concurs specially, with opinion.

Parker, C.J., concurs in part and concurs in the result, with opinion.

Mendheim, J., concurs in the result.

Sellers, J., dissents.

MITCHELL, Justice (concurring specially).

I concur in the main opinion because it reaches the correct result and faithfully applies our precedents. That said, I agree with Chief Justice Parker that the damage approach to interpreting § 6-5-574, Ala. Code 1975, is plainly incorrect. In an appropriate future case, when asked to do so by the parties, the Court should clarify this area of the law and definitively hold that the occurrence approach, not the damage approach, is required by the statute's text.

PARKER, Chief Justice (concurring in part and concurring in the result).

I agree that Erica Rae Fox's legal-malpractice claims are barred by the time-bar statute in the Alabama Legal Services Liability Act ("ALSLA"), § 6-5-570 et seq., Ala. Code 1975. In my view, however, this Court should establish, without further delay, that the occurrence rule is the only correct interpretation of the two-year provision in § 6-5-574(a). The occurrence rule is required by the language of the provision, whereas the accrual rule (sometimes called the "damage rule") directly contradicts that language. This Court's original adoption of the accrual rule was built on a flawed foundation. And our continued attempts to apply both rules simultaneously depart from our institutional role of clarifying the law and impose unnecessary burdens on the resources of litigants and courts.

I also write to point out the need for this Court to develop a coherent theory of accrual of a legal-malpractice cause of action. Accrual will be relevant to the statutory analysis even after (as I hope) the accrual rule is abandoned. And the results of cases often hinge on the date of accrual. But our prior cases have been very inconsistent in pinpointing when a cause of action accrues, so working out a coherent theory will be necessary to ensure predictability and adherence to the rule of law.

## I. Occurrence rule versus accrual rule

The two-year provision of ALSLA's time-bar statute provides: "All legal service liability actions against a legal service provider must be commenced within two years after the <u>act or omission or failure</u> giving rise to the claim, and not afterwards ...." § 6-5-574(a), Ala. Code 1975 (emphasis added). This Court should establish the occurrence rule and abandon the accrual rule because the text of the statute requires the occurrence rule.

### A. The text requires the occurrence rule

The two-year provision creates a bright line for when its time-bar period commences: the occurrence of the lawyer's "act or omission or failure." § 6-5-574(a), Ala. Code 1975. The provision does not reference accrual of a cause of action, incurring legal injury, or experiencing damage. "[T]he Alabama Legislature, by adopting the 'act or omission or failure' language ..., rejected the damage rule .... This Court is bound by the unambiguous language of § 6-5-574(a) and must give effect to that language ...." <u>Ex parte Panell</u>, 756 So. 2d 862, 867 (Ala. 1999) (plurality opinion); see also <u>Ex parte Seabol</u>, 782 So. 2d 212, 214 (Ala. 2000) (quoting with approval <u>Panell</u> plurality's articulation of the occurrence

28

rule); <u>Dennis v. Northcutt</u>, 887 So. 2d 219, 221 (Ala. 2004) (plurality opinion) (same); <u>Roberts v. Lanier</u>, 72 So. 3d 1174, 1184-85 (Ala. 2011) (applying occurrence rule to two-year provision). The language of the two-year provision unambiguously requires us to apply the occurrence rule.

In some cases, the occurrence rule that is required by the plain meaning of the two-year provision may have seemingly harsh or unfair results. But it is not this Court's role to "displace the legislature by amending statutes to make them express what we think the legislature should have done. Nor is it this Court's role to assume the legislative prerogative to correct defective legislation ...." <u>Siegelman v. Chase Manhattan Bank (USA), Nat'l Ass'n</u>, 575 So. 2d 1041, 1051 (Ala. 1991).

> "Fidelity to … separation-of-powers … requires us to determine and adhere to the meaning of the statute's text, even if doing so leads to an inefficient or undesirable result. [<u>DeKalb Cnty. LP Gas Co. v. Suburban Gas, Inc.</u>, 729 So. 2d 270, 276 (Ala. 1998)]; <u>Ex parte T.B.</u>, 698 So. 2d 127, 129-30 (Ala. 1997). Therefore, 'our inquiry begins with the language of the statute, and if the meaning of the statutory language is plain, our analysis ends there.' <u>Ex parte McCormick</u>, 932 So. 2d 124, 132 (Ala. 2005). We must 'interpret that language to mean exactly what it says.' <u>IMED Corp. v. Systems Eng'g Assocs. Corp.</u>, 602 So. 2d 344, 346 (Ala. 1992)."

<u>Lang v. Cabela's Wholesale, LLC</u>, [Ms. 1200851, June 24, 2022] ___ So. 3d ___, ___ (Ala. 2022). Our role is to apply a statute as it is written and

leave for the Legislature to decide whether and how it will be rewritten.

## B. Clarifying the nature of the two-year provision

I suspect that much of this Court's difficulty interpreting the two-year provision has resulted from its heterogenous design. Although we have often referred to it as a statute of limitations, it is actually a hybrid between a statute of limitations and a statute of repose.

A statute of limitations imposes a time-bar period that runs from accrual of the cause of action. See Garrett v. Raytheon Co., 368 So. 2d 516, 518-19 (Ala. 1979), overruled on other grounds, Griffin v. Unocal Corp., 990 So. 2d 291 (Ala. 2008); Payne v. Alabama Cemetery Ass'n, 413 So. 2d 1067, 1072 (Ala. 1982); Black's Law Dictionary 1707 (11th ed. 2019). And a statute of limitations may be subject to exceptions. See Pinigis v. Regions Bank, 977 So. 2d 446, 449 (Ala. 2007). In contrast, a statute of repose imposes a time-bar period that runs from a specific event such as the defendant's act or omission, regardless of when the cause of action accrues. See Black's Law Dictionary 1707 (11th ed. 2019); 54 C.J.S. Limitations of Actions § 28 (2020); 3 Ronald E. Mallen, Legal Malpractice § 23:1 (2023 ed.). And a statute of repose is ordinarily not subject to exceptions. See Pinigis, 977 So. 2d at 449-50; Mallen, supra.

The two-year provision resembles a statute of limitations because it is subject to the exception contained in the discovery (or "savings") provision that follows it in § 6-5-574(a). The two-year provision may also be subject to the general statute-of-limitations exceptions incorporated into § 6-5-574(b). More importantly for present purposes, however, the two-year provision's time-bar period functions as a statute of repose because it expressly runs from a specific event: the lawyer's "act or omission or failure." This clarification is important because many prior criticisms of the occurrence-rule interpretation of the two-year provision have been rooted in a misunderstanding of its nature and function.

### C. This Court's original adoption of the accrual rule was fundamentally flawed

This Court first applied the accrual rule to ALSLA in <u>Michael v. Beasley</u>, 583 So. 2d 245 (Ala. 1991). In <u>Michael</u>, we never discussed the language of the two-year provision. Instead, we were interpreting a different provision that specified the date that ALSLA would be in force, § 6-5-581, Ala. Code 1975. The following was the totality of our analysis supporting adoption of the accrual rule:

> "[ALSLA] ... applies only to actions against legal service providers based on 'acts or omissions accruing [occurring?] after April 12, 1988.' § 6-5-581. It is unclear whether the

legislature intended [ALSLA] to apply to acts or omissions <u>occurring</u> after April 12, 1988, or causes of actions [sic] <u>accruing</u> after that date. However, in reading § 6-5-574(a) and § 6-5-581 together, in considering the legislative intent expressed in § 6-5-570, and in comparing [ALSLA] to the Alabama Medical Liability Act, § 6-5-480 et seq. (hereinafter 'the AMLA['])[,] and the Alabama Medical Liability Act of 1987,[] § 6-5-540 et seq. (hereinafter 'the 1987 Act'), we determine that the legislature intended [ALSLA] to apply to causes of actions [sic] 'accruing' after April 12, 1988, and not to acts or omissions 'occurring' after that date.[2]

"_____

"[2]In enacting the 1987 Act, Act No. 87-189, Ala. Acts 1987, codified at Ala. Code 1975, § 6-5-540 et seq., the legislature included § 13 (codified at § 6-5-552), a provision similar to § 6-5-581: 'This article applies to all actions against health care providers based on acts or omissions accruing [occurring?] after June 11, 1987.' This Court had previously interpreted the statute of limitations in medical malpractice actions as being based on accrual and not occurrence.

"In <u>Street v. City of Anniston</u>, 381 So. 2d 26, 31 (Ala. 1980), the Court stated that 'the Medical Liability Act contains a traditional statute of limitations, one which commences the running of the statute from the <u>accrual of the cause of action</u>, and is not subject to constitutional infirmity under [Article IV,] § 45[, Ala. Const. 1901 (requiring that a legislative bill's subject be clearly expressed in its title)].' (Emphasis added.) See <u>Bowlin Horn v. Citizens Hosp.</u>, 425 So. 2d 1065 (Ala. 1982); <u>Thomas v. Niemann</u>, 397 So. 2d 90 (Ala. 1981) (Jones, J., concurring); <u>Ramey v. Guyton</u>, 394 So. 2d 2 (Ala. 1980). This same rationale applies to [ALSLA]."

<u>Id.</u> at 246-47 (bracketed words followed by question marks in original).

At the end of the opinion, without having engaged in any further analysis

on this point or having discussed the language of any ALSLA provision other than § 6-5-581 as to this point, we then stated a broad holding about <u>all</u> of ALSLA's time limits: "[T]he time limits in [ALSLA] are to be measured from the date of the accrual of a cause of action and not from the date of the occurrence of the act or omission." <u>Id.</u> at 252.

In hindsight, it is hard to imagine an interpretation more diametrically opposed to the relevant statutory language. The two-year provision's language is "within two years after the act or omission or failure giving rise to the claim." § 6-5-574(a). <u>Michael</u> interpreted that language as "not from the date of the occurrence of the act or omission." 583 So. 2d at 252. Moreover, whatever ambiguity may have existed in the provision that <u>Michael</u> did examine -- § 6-5-581, which contained the odd phrase "acts or omissions accruing" -- that ambiguity was completely absent from the two-year provision of § 6-5-574(a).

Further, <u>Michael</u>'s reliance on <u>Street v. City of Anniston</u>, 381 So. 2d 26 (Ala. 1980), was misplaced because <u>Michael</u> disconnected the concepts of act/omission and accrual, whereas <u>Street</u> had expressly connected them. In <u>Street</u>, a patient sued a doctor, alleging medical malpractice. 381 So. 2d at 27-28. The doctor raised the time-bar statute in the

Alabama Medical Liability Act. Id. at 28. The statute provided that medical-malpractice actions "must be commenced within two years next after the act, or omission, or failure giving rise to the claim," § 6-5-482(a), using the same language as was later used in ALSLA's two-year provision. The patient argued that the statute violated Article IV, § 45, of the Alabama Constitution of 1901, which required that the subject of each law "'be clearly expressed in its title.'" Id. at 30. This Court noted that the statute was titled as "'a statute of limitations.'" Id. at 31. However, if the statute's time-bar period was commenced by the act or omission, rather than the patient's legal injury, the time-bar period could theoretically expire before the patient received legal injury. In such a case, the patient's claim would be barred before the cause of action accrued. See id. at 30. That possibility would cause the statute to be a statute of repose (which Street described as a "grant of immunity") rather than a statute of limitations. And that would mean that the statute had been misdescribed as a "statute of limitations" in its title and thus violated § 45. See id. at 30-31.

How did this Court avoid that conundrum in Street? We circumvented the constitutional issue by holding that, in medical-

34

malpractice cases, act/omission and injury/accrual are always simultaneous events. Id. at 31. Specifically:

> "[O]ur case law has established that, in [medical-] malpractice actions, legal injury occurs at the time of the negligent act or omission, whether or not the injury is or could be discovered within the statutory period. Thus, the [Alabama] Medical Liability Act contains a traditional statute of limitations, one which commences the running of the statute from the accrual of the cause of action, and is not subject to constitutional infirmity under § 45."

Id. (citations omitted). In other words, because act/omission was necessarily simultaneous with accrual, the statute's "act, or omission, or failure" language was synonymous with accrual.

When we later interpreted ALSLA's two-year provision in Michael, however, we relied on Street to support exactly the opposite proposition. In Michael, we held that ALSLA's two-year period ran "from the date of the accrual of a cause of action and not from the date of the occurrence of the act or omission." 583 So. 2d at 252 (emphasis added). In that way, Michael founded its conclusion on a case that was premised on the opposite of that conclusion.[3]

_____

[3]Notably, Street's premise of simultaneous act/omission and accrual did not age well. Within a year, we were already backing away from it and separating the time of accrual from the time of the medically

Therefore, <u>Michael</u>'s adoption of the accrual rule was not only contrary to the language of the statute but also founded on precedent that did not support it.

### D. The problem of coexisting divergent rules

Since a plurality of this Court attempted to return to the statutory language in <u>Ex parte Panell</u>, 756 So. 2d 862 (Ala. 1999), this Court has spent two decades trying to simultaneously follow the (incompatible)

---

negligent act or omission. See <u>Ramey v. Guyton</u>, 394 So. 2d 2 (Ala. 1980) (plurality opinion); <u>id.</u> at 6 (Shores, J., concurring specially); <u>Thomas v. Niemann</u>, 397 So. 2d 90, 94 (Ala. 1981) (Jones, J., concurring specially). Initially, some Justices tried to adhere to <u>Street</u> and bridge the gap between act/omission and accrual by employing such creative yet dubious concepts as a doctor's "impliedly continuing act," a doctor's omission by "failure to discontinue" a medication prescription, and an extension of a doctor's act by the patient's later acting on the doctor's advice. See <u>Ramey</u>, 394 So. 2d at 6 (Shores, J., concurring specially); <u>Thomas</u>, 397 So. 2d at 94 (Jones, J., concurring specially). Since then, our distance from <u>Street</u>'s simultaneousness premise has increased with time. We have made increasingly clear that act/omission and accrual are neither synonymous nor necessarily simultaneous. See <u>Guthrie v. Bio-Med. Lab'ys, Inc.</u>, 442 So. 2d 92, 95 (Ala. 1982); <u>Colburn v. Wilson</u>, 570 So. 2d 652, 654 (Ala. 1990); <u>Mobile Infirmary v. Delchamps</u>, 642 So. 2d 954, 958 (Ala. 1994); <u>Crosslin v. Health Care Auth. of Huntsville</u>, 5 So. 3d 1193, 1197-99 & n.2 (Ala. 2008) (plurality opinion); <u>id.</u> at 1199 (Lyons, J., concurring in part and concurring in result); <u>Cutler v. University of Alabama Health Servs. Found.</u>, 215 So. 3d 1065, 1068-73 (Ala. 2016) (plurality opinion); <u>id.</u> at 1073-74 (Murdock, J., concurring specially). Thus, the foundation of <u>Street</u>'s interpretation of the time-bar statute in the Alabama Medical Liability Act has been substantially undermined.

occurrence and accrual rules for applying ALSLA's two-year provision. We have justified that ambivalence by the fact that both rules have, at least in those cases, led to the same result. See Floyd v. Massey & Stotser, P.C., 807 So. 2d 508, 511-12 (Ala. 2001); Taylor v. Stevenson, 820 So. 2d 810, 813 (Ala. 2001) (self-acknowledged dicta); Denbo v. DeBray, 968 So. 2d 983, 988-90 (Ala. 2006); Coilplus-Alabama, Inc. v. Vann, 53 So. 3d 898, 906-07 (Ala. 2010); cf. Ex parte Edwards, 299 So. 3d 238, 243 & n.4 (Ala. 2020). But that course of action is inconsistent with this Court's institutional role. This Court exists not merely to decide the results of individual cases, but -- more importantly -- to clarify the law "for the benefit of lower courts, attorneys, and the public. This duty derives from our constitutional role, as 'the highest court of the state,' of exercising 'general supervision and control of courts of inferior jurisdiction,' Art. VI, § 140(a) and (b), Ala. Const. 1901 (Off. Recomp.)." Ex parte Self, [Ms. 1200431, Sept. 10, 2021] ___ So. 3d ___, ___ (Ala. 2021) (Parker, C.J., concurring specially). We cannot fulfill this duty by continuing to perpetuate two contradictory rules for applying the same statute.

Further, there are real-world consequences to this Court's continued halting between two opinions. In every ALSLA case in which

the two-year provision is raised, the parties' counsel and potentially the trial and appellate courts must analyze the facts under both the occurrence rule and the accrual rule. That dual analysis may include the whole waterfall of each rule's potential effects on the application of the several other provisions of the ALSLA time-bar statute. This exercise imposes real costs on clients and judicial resources. And those costs cannot continue to be justified when it has become clear that one rule is right and the other is wrong.

Accordingly, this Court should cease trying to simultaneously ride the tracks of two divergent rules (and forcing litigants and lower courts to do so), leave behind the mistaken accrual rule, and follow the language of the statute.

## II. Accrual of a legal-malpractice cause of action

If, as I hope, this Court in a future case establishes the occurrence rule and abandons the accrual rule under the two-year provision of § 6-5-574(a), Ala. Code 1975, the concept of accrual will still be relevant under the statute's discovery provision. The discovery provision indirectly links the commencement of its six-month period to accrual:

> "[I]f <u>the cause of action</u> is not discovered and could not reasonably have been discovered within [the initial two-year]

> period, then the action may be commenced within six months from the date of such discovery or the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier ...."

§ 6-5-574(a) (emphasis added). In light of accrual's continuing relevance, its proper application is worth examining.

In this case, under our precedent, Fox's causes of action based on the defense attorneys' failure to timely appeal accrued when the Court of Criminal Appeals dismissed the appeal on that basis. In general, when a lawyer's mistake occurs mid-litigation and is a type of mistake that could result in a final adjudication adverse to the client, we have held that the malpractice cause of action accrues when a court first enters such an adverse adjudication. See Brewer v. Davis, 593 So. 2d 67 (Ala. 1992); Welborn v. Shipman, 608 So. 2d 334 (Ala. 1992); Cantrell v. Stewart, 628 So. 2d 543 (Ala. 1993); Turner v. Barnes, 687 So. 2d 197, 198-99 (Ala. 1997). This rule is consistent with reasoned scholarly commentary. See Tyler T. Ochoa & Andrew J. Wistrich, Limitation of Legal Malpractice Actions: Defining Actual Injury and the Problem of Simultaneous Litigation, 24 Sw. U.L. Rev. 1, 2-3, 14-25, 27-32, 65-67 (1994); 3 Ronald E. Mallen, Legal Malpractice § 23:39 (2023 ed.). But see Mallen, supra, §§ 23:38, 23:40 (taking positions different from that rule).

Nevertheless, it is worth noting that there is tension and inconsistency among this Court's opinions regarding when a legal-malpractice cause of action accrues. We have variously held that it accrues when:

- the lawyer's act or omission occurs. See <u>Mardis v. Shackleford</u>, 4 Ala. 493, 504, 506-08 (1842); <u>Lomax v. Gibson</u>, 584 So. 2d 445 (Ala. 1991); <u>Leighton Ave. Off. Plaza, Ltd. v. Campbell</u>, 584 So. 2d 1340, 1342-43 (Ala. 1991); <u>Mississippi Valley Title Ins. Co. v. Hooper</u>, 707 So. 2d 209, 211-13 (Ala. 1997); <u>Wesson v. McCleave, Roberts, Shields & Green, P.C.</u>, 810 So. 2d 852 (Ala. 2001); <u>Price v. Ragland</u>, 966 So. 2d 246, 247-61 (Ala. 2007); <u>Ex parte Edwards</u>, 299 So. 3d 238, 240, 243 & n.4 (Ala. 2020).

- the client learns of the act or omission. See <u>Floyd v. Massey & Stotser, P.C.</u>, 807 So. 2d 508 (Ala. 2001).

- the client acts in reliance on the act or omission. See <u>McConico v. Romeo</u>, 561 So. 2d 523, 524-25 (Ala. 1990); <u>Ladner v. Inge</u>, 603 So. 2d 1012 (Ala. 1992); <u>Denbo v. DeBray</u>, 968 So. 2d 983, 984-90 (Ala. 2006); <u>Coilplus-Alabama, Inc. v. Vann</u>, 53 So. 3d 898,

40

899-908 (Ala. 2010); cf. Sirote & Permutt, P.C. v. Bennett, 776 So. 2d 40 (Ala. 2000) (third party).

- an opposing party files suit against the client based on the act or omission. See Leighton, 584 So. 2d at 1342-43.

- the client incurs legal fees or other expenses, or experiences emotional harm, as a result of the act or omission. See Ex parte Burnham, Klinefelter, Halsey, Jones & Cater, P.C., 674 So. 2d 1287 (Ala. 1995); Denbo, 968 So. 2d at 984-90.

- a court enters a judgment against the client as a result of the act or omission. See Cofield v. Smith, 495 So. 2d 61 (Ala. 1986); Brewer, 593 So. 2d 67; Welborn, 608 So. 2d 334; Cantrell, 628 So. 2d 543; Burnham, 674 So. 2d at 1289; Turner, 687 So. 2d at 198-99; cf. Michael v. Beasley, 583 So. 2d 245, 245-46, 251-52 (Ala. 1991); Ex parte Panell, 756 So. 2d 862, 869 (Ala. 1999) (plurality opinion).

One cause of this tension among our opinions may be a fundamental doctrinal distinction that deeply affects the meaning of accrual but that our opinions have not clearly recognized. This distinction is the difference

between contract and tort causes of action. A breach-of-contract cause of action has often been framed as having four elements: a valid contract, the plaintiff's performance, the defendant's nonperformance, and resulting damages. E.g., <u>Childs v. Pommer</u>, 348 So. 3d 379, 387 (Ala. 2021); <u>Barrett v. Radjabi-Mougadam</u>, 39 So. 3d 95, 98 (Ala. 2009). But that is not quite accurate. On a breach-of-contract claim, a plaintiff may recover nominal damages; concrete injury is not required. See <u>Knox Kershaw, Inc. v. Kershaw</u>, 552 So. 2d 126, 128 (Ala. 1989); <u>Avis Rent A Car Sys., Inc. v. Heilman</u>, 876 So. 2d 1111, 1120 (Ala. 2003). Thus, proof of damages or concrete injury is not actually required for a breach-of-contract cause of action and thus cannot be an element. (Of course, if the plaintiff wants to recover more than nominal damages, he must prove them. But that is different from saying that damages are an element, an essential component, of the cause of action.) Thus, in reality, there are only three elements of a breach-of-contract cause of action, ending with the defendant's nonperformance. Once the plaintiff performs and the defendant does not, even if the plaintiff has not received any concrete or perceptible injury, all elements are present and the cause of action accrues. See <u>Stephens v. Creel</u>, 429 So. 2d 278, 280-83 (Ala. 1983).

42

In contrast, on tort claims, nominal damages are generally not available. See Ex parte Stonebrook Dev., L.L.C., 854 So. 2d 584, 589 (Ala. 2003) (quoting Matthews Bros. Constr. Co. v. Stonebrook Dev., L.L.C., 854 So. 2d 573, 578 (Ala. Civ. App. 2001)) ("'Nominal damages, to vindicate a technical right, cannot be recovered in a negligence action, where no actual loss has occurred.'"). Thus, damages is a required element. Stephens, 429 So. 2d at 280. And that means that a tort cause of action generally accrues only when the plaintiff receives concrete, perceptible harm. See id. at 281.

Here is the rub: Legal malpractice can be conceptualized as either a contract cause of action or a tort cause of action. See George L. Blum, Annotation, When Statute of Limitations Begins to Run on Action Against Attorney for Malpractice Based upon Negligence -- View that Statute Begins to Run from Time of Occurrence of Negligent Act or Omission, 11 A.L.R. 6th 1, at § 2 (2006) ("[I]n the view of some courts, an action to recover for an attorney's malpractice may sound either in contract, on the theory that the defendant breached the obligations of his or her employment, or in tort, on the theory that the defendant was negligent."); id. at § 3 ("Typically, an action for legal malpractice may be

brought on contract or tort grounds."); Blanche M. Manning, <u>Legal Malpractice: Is It Tort or Contract?</u>, 21 Loy. U. Chi. L.J. 741 (1990); <u>Ex parte Watters</u>, 212 So. 3d 174, 182 (Ala. 2016) ("[T]he issue whether the [present legal-malpractice] claim sounds in tort, in contract, or in both for that matter, is sharply disputed by the parties."). As a contract cause of action, it accrues at the time of breach -- the lawyer's act or omission. See <u>Wilcox v. Executors of Plummer</u>, 29 U.S. (4 Pet.) 172, 182 (1830). As a tort cause of action, it accrues at the time of damages -- the client's reception of concrete, perceptible harm. Cf. <u>Mylar v. Wilkinson</u>, 435 So. 2d 1237, 1239 (Ala. 1983); <u>Hall v. Thomas</u>, 456 So. 2d 67 (Ala. 1984).

Now, if the solution were simply to inspect the complaint to see which way the client pleaded the claim, in contract or in tort, there would be little cause for consternation. But that easy solution does not exist, at least not anymore, because ALSLA says that its newly created omnibus cause of action subsumes all previous legal-malpractice causes of action in <u>both</u> contract and tort, see §§ 6-5-572(1), 6-5-580. And ALSLA does not clearly indicate whether its new omnibus cause of action requires damages. Compare § 6-5-572(1) (defining "[l]egal service liability action" as "[a]ny action against a legal service provider in which it is alleged that

some injury or damage was caused in whole or in part by the legal service provider's violation of the standard of care ...." and providing that [a] legal service liability action embraces all claims for injuries or damages or wrongful death ...." (emphasis added)) and -572(4) (defining "[b]reach of the standard of care" as "[t]he failure by a legal service provider to comply with the applicable standard of care the breach of which proximately causes the injury or damages or wrongful death" (emphasis added)), with § 6-5-572(1) (providing that "[a] legal service liability action embraces all claims for injuries or damages or wrongful death whether in contract or in tort ...." and that "[a] legal services liability action embraces any form of action in which a litigant may seek legal redress for a wrong or an injury and every legal theory of recovery ...." (emphasis added)). So ALSLA does not make clear when its cause of action accrues.

Faced with this conundrum, I believe that the best solution is to look to pre-ALSLA common law's articulation of the elements of a legal-malpractice cause of action. Before ALSLA, our most recent cases treated legal malpractice as a tort cause of action requiring proof of damages. See Tyree v. Hendrix, 480 So. 2d 1176, 1177 (Ala. 1985); Johnson v. Horne, 500 So. 2d 1024, 1026 (Ala. 1986). But see Mardis v. Shackleford, 4 Ala.

45

493, 506-08 (1842) (older case treating legal-malpractice claim as a breach-of-contract cause of action for which proof of damages was not required). Moreover, there is much common sense in that damages requirement. Without concrete, perceptible harm, the vast majority of clients will have no reason to sue their lawyers. Nor, in most circumstances, is it clear why courts should be open to adjudicating technical breaches of attorney-client contracts that resulted in no harm. And given these realities, it makes little sense to require a client to sue for a harmless breach within a certain time or forfeit his claim. Instead, when it comes to legal malpractice, the modern maxim is apropos: No harm, no foul.

A second cause may lie behind the inconsistency among our legal-malpractice accrual cases. It seems that we have not clearly and consistently articulated a general theory for when accrual occurs. Instead, in each case, we have mainly tracked the arguments of the parties regarding when accrual occurred. The problem is that the parties have not been motivated by a search for a consistent theory. Rather, they have been motivated by one simple fact, determined by basic math: the date exactly two years before the action was commenced. Defendants

must find a plausible date of accrual before that date. Plaintiffs must find a plausible date of accrual after that date. To both sides, it matters little which precise event triggered accrual, as long as it is on the right side of that date. So if we want a consistent theory for accrual, we cannot depend on the parties to work it out for us. Instead, we might find benefit in the work of legal scholars who have attempted to frame a coherent theory of accrual. See, e.g., Mallen, supra, § 23:25 ("For evaluating [accrual of] legal malpractice claims, a ... useful definition of injury is the loss or impairment of a right, remedy or interest, or the imposition of a liability. These are the spectrum of injuries sustained by clients." (footnote omitted)); Ochoa & Wistrich, supra.

Because the relevance of accrual will survive even if (as I hope) the accrual rule of <u>Michael</u> does not, and because the date of accrual will often be dispositive under the discovery provision, it is worth this Court's effort to work out a coherent theory of accrual of a cause of action for legal malpractice. As a starting point, I propose adhering to a tort-based requirement of damages and factoring in the impact of subsequent court rulings on mid-litigation malpractice.

## III. Conclusion

47

As always, courts' interpretation of a statute must be bound to the text. When the meaning is plain, we must not ignore, evade, distort, improvise on, modify, or otherwise depart from that meaning. This Court has spent a decade departing from the plain meaning of the two-year provision of ALSLA's time-bar statute and another two decades straddling the divide between that plain meaning and that departing interpretation. It is time, in my view, that we rectify those errors and re-anchor our jurisprudence to the text.